CULPEPPER, Judge.
This is a suit for foreclosure by executory process on a mortgage covering Lot 5 of Phil-Hurst Subdivision in Lafayette Parish, Louisiana. The companion case,1 involving the same parties, 130 So.2d 753, is a foreclosure by executory process on Lot 2 of said Phil-Hurst Subdivision. We are this date rendering a separate opinion in said companion case which was consolidated with the instant case for purposes of trial in the lower court and for purposes of consideration on appeal.
When the plaintiff Bank filed these two foreclosure proceedings, the intervenors and third opponents, who had furnished materials or labor for the construction of the residences on the two lots in question and had filed liens under LSA-R.S. 9:4801, contended that their respective liens primed the two mortgages held by American Bank & Trust Company. The lower court held in favor of the one furnisher of labor but denied recovery as to the remaining intervenors who furnished materials and *751 from this judgment only two of said fur-nishers of materials have appealed.
The first contention of intervenors-appellants is that their liens prime the mortgages because labor had begun and materials had been furnished on the lots in question before the mortgages were recorded and the notes delivered to the bank. The statutory provision is LSA-R.S. 9 ¡4801, Subsec. C which reads in part as follows:
“C. When a mortgage note has been executed by the owner of the immovable for the purpose of securing advances to be made in the future, and the mortgage has been recorded and the note delivered to the lender before any work or labor has begun or material been furnished, or before the recordation of a building contract, the amount ■of the advances made thereafter shall be deemed secured by the mortgage in precedence to and with priority over any of the claims had under the privileges conferred by Sub-Section A of this Section * *
The evidence is clear that both mortgages were recorded on February 19, 1957, at 4:55 P.M. and the notes secured thereby were delivered to the plaintiff Bank at approximately 6:00 P.M. on the same date. The testimony of the various witnesses, as ■corroborated by the invoices filed in evidence, shows that the earliest delivery of materials actually ordered for these two jobs was made by Sullivan Lumber Company on February 20, 1957 to Lot 5. According to the testimony of the defendant, Paul H. Phillips, and his construction foreman, Mr. Broussard, the house on Lot 5 was '“staked out” on February 21 and actual construction of the foundation began on February 22, 1957. According to these witnesses construction on Lot 2 did not begin until about one week later.
However, it is the contention of the in-tervenors that prior to the date of recordation of the mortgage certain scrap lumber for batter boards and stakes as well as a few pieces of pipe had already been moved by the foreman, Mr. Broussard, to Lot 5 from Lots 3 and 4 of said Phil-Hurst Subdivision which are adjacent thereto and on which Broussard had built similar dwellings for the defendant Phillips. It is also the contention of intervenors that prior to the date of recordation of the mortgages ■certain gravel had been placed on Lot 2 for use in the field lines of the sewerage system. The fevidence on these issues is conflicting, the Bank’s witnesses testifying positively that the few pieces of pipe and the scrap lumber for stakes and batter boards-were not placed on Lot 5 but were placed in front of Lot 5 on that portion of the street right of way between the front lot line and the shell road. Intervenors’ witness, JLargis Chaison, an employee of Sullivan Lumber Company, testified that when he delivered lumber to Lot 5 on February 20, 1957, there was already some scrap lumber on the lot and that he used some of it on which to stack his new lumber. On this issue it is our opinion that the evidence clearly preponderates in favor of the Bank that the scrap lumber and the few pieces of pipe were not on Lot 5, but were on the right of way for the street. We are also of the opinion that intervenors have clearly failed to prove that the gravel in question was located on Lot 2. It appears from the evidence that this gravel had been dumped on the driveway of the house located on the adjoining Lot 3, and later moved either to the street in front or to another portion of said Lot 3.
Intervenors also contend that previous to the date of recordation of the mortgages, Lot 5 had been leveled in preparation for construction of the dwelling. There is no evidence to support this contention except a portion of the testimony of Mr. Brous-sard in which he said that on about February 16 or 17th he had a Negro with a pick and shovel cut the tops off of the cultivated rows on Lot 5. However, later in his testimony Mr. Broussard testified that this work was not done until February 20.
On these issues the trial judge, in a well-considered written opinion, held as follows:
“Answering the contention of inter-venors that certain stakes used in the construction upon Lots 3 and 4 were moved to Lots 2 and 5 after the completion of construction on Lots 3 and 4, which evidence is contradicted, but even accepting the same as true by the Court merely for the purpose of affording the most favorable position to in-tervenors, the Court is of the opinion that such moving of stakes for construction at some future date did not constitute hauling of material upon a lot for the actual beginning of construction.”
Although counsel have not cited, nor have we been able to find any Louisiana case *752 dealing with the issue at hand, the following general rule, developed in the appellate courts of our sister states, is found in 57 C.J.S. Mechanics’ Liens § 200, page 755:
“In order that a particular date maybe fixed as that on which the building was commenced, within the meaning of the foregoing rules, it is necessary and sufficient that, on such date, there shall have been done work of such a substantial and conspicuous character as to make it reasonably apparent to the mortgagee that the building has actually commenced, * * *
It is our opinion that in the instant case no work or labor had begun or material been furnished on Lot 5 of Lot 2 before the mortgages were recorded and the notes delivered within the meaning of LSA-R.S. 9:4801. Actually the evidence does not show that the scrap lumber or the few pieces of pipe or the very small amount of gravel were located on the lots in question before February 20, 1957, nor that the small amount of leveling work had been done on Lot 5, but even if they had, they were not of a sufficiently substantial and conspicuous character to make it reasonably apparent to the mortgagee that construction had actually commenced.
The next contention of intervenors is made under the provisions of LSA-R.S. 9:4816 which reads in pertinent part as follows:
“A. Any person furnishing service or material or performing any labor for the contemporaneous or continuous construction or improvement by the same general contractor of two or more buildings or works situated on adjacent lots or parcels of ground owned by the same person may file a single privilege upon all of said buildings or works and upon the lands upon which they are situated, whether said constructions or improvements be made under one or several contracts, * *
Lots 2, 3, 4, and 5 of the Phil-Hurst Subdivision are adjacent and it is the contention of the intervenors that the construction of the improvements on these four lots was contemporaneous, continuous, by the same general contractor and for the same owner so as to fall within the provisions of LSA-R.S. 9:4816 quoted above. The in-tervenors’ witness, Hubert Hebert, Jr., testified- that in July of 1956 he talked to the defendant, Paul Phillips, about building ten houses, and that his bid on the plumbing work was predicated on such a project. However, the evidence is clear that there was no written or oral contract for the plumbing work on ten houses, that there was no definite date for the starting or completion of each individual unit and that Hebert was to be paid as he completed each unit. We have no difficulty in finding the trial judge was correct in holding that LSA-R.S. 9:4816 is inapplicable. Actually the only requirement of the cited statute which is present in the instant case is that the four lots were adjacent. The construction of the improvements thereon was not contemporaneous or continuous, the evidence showing that after the improvements on Lots 3 and 4 were completed the defendant Phillips then left this area and did construction work in Holden Heights before returning to Phil-Hurst Subdivision to build houses on Lots 2 and 5. Furthermore, the evidence is uncontradicted that at the time of construction Lots 3 and 4 were owned by Phil-Hurst Enterprises, Inc., which acted as its own general contractor for the building of the houses thereon while Lots 2 and 5 were owned by Paul H. Phillips, d/b/a Phil-Mar Construction Company who acted as the general contractor with reference to the construction on these lots. Clearly the cited statute has no application here. See R. J. Jones & Sons v. Meyer et al., 220 La. 153, 55 So.2d 898.
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed against the inter-venors-appellants.
Affirmed.