BAILES, Judge.
This is a consolidation of companion suits filed to foreclose by executory process on mortgages covering Lots 114 and 116 of the Slidell Country Club Estates Subdivision, St. Tammany Parish, Louisiana.
As holder of promissory notes executed by Evans-Benck Construction Company, Inc., endorsed individually by Tom L. Evans and Dow William Benck and secured by an act of mortgage dated September 17, 1965, Pringle-Associated Mortgage Corporation instituted suits against the maker and indor-sers of the notes to foreclose on the mortgaged properties by executory process. At this time, petitions of intervention were filed in both suits by Doyle Watts, d/b/a Watts Electric, Slidell Refrigeration and Heating, Inc., and Carpets Linoleum alleging that intervenors had furnished labor and/or materials in varying amounts for use on the subject properties for which liens had been filed and recorded and praying that these liens be recognized as prior in rank and superior to the mortgage held by plaintiff. Thereafter, on motion of plaintiff, the two cases were consolidated for trial and determination. Judgment was rendered on September 30, 1966, dismissing the interventions and ordering the distribution of the proceeds of the sale of the properties to Pringle-Associated Mortgage Corporation in preference to any and all other claimants. From this judgment, Watts Electric and Slidell Refrigeration and Heating, Inc. perfected devolutive appeals. We find no error in the judgment, and accordingly it is affirmed.
The sole question presented by these .appeals is whether, under the provision of R. S. 9:4801 and 9:4812, the mortgage was recorded and the notes delivered before any work or labor began or material was furnished, thereby bringing the mortgage within one of the exceptions to the superior rank of the privilege created by these provisions?
The evidence discloses that the mortgages were executed on September 17, 1965, covering Lots 114 and 116 of the Slidell Country Club Estates Subdivision, to secure advances to be made in the future. A typewritten clause in the mortgage stated that promissory notes were executed issued and delivered that date. The mortgages were properly recorded on September 23, 1965.
Testifying on behalf of intervenors, Clifford Doyle Watts stated that on September 14, 1965, a temporary meter loop was installed by his company on Lot 115, Country Club Estates for Evans-Benck. The electrician who actually installed the loop, Albert Schwartz, was called and testified that Lots 114 and 116 had been cleared of the bushes, trees and other undergrowth normally found in the area when he erected the apparatus to supply temporary electricity to Lot 115.
Dennis Glass, who did clearing and landscaping for Evans-Benck, testified that late in July, 1965, he was contacted by Mr. Benck who told him that there would be construction on Lots 114, 115 and 116 but that it was necessary to complete clearing and leveling Lot 115 as soon as possible. No other mention was made of Lots 114 and 116. Glass stated, that in the preparation of Lot 115:
“We cleared everything off, burned it up and Monday afternoon, we had a fire *608 going. So I wanted to go ahead and pour my dirt. I pushed my fire over on 114 and backed the undergrowth off while I was there. I couldn’t finish it and I knew I was busy. I had some extra dirt on 115 and I pulled it on 116 where we had a low spot. We had a big canal on back of 115 and we had a lot of extra dirt we put on 116.”
And to the question, “Was this work that was visible?”, he said:
"Yes, you could tell the fire. From the front of the lot you couldn’t tell where I put the dirt on 116. There was one spot right in the middle that was low on 116 and I pushed the dirt in it. I pushed it all over and you couldn’t tell unless you looked.”
There was testimony by Glass about a mound of dirt running along the back of all three lots which was piled there when a canal was dug. There was no evidence, however, indicating when this canal was dug or what its precise purpose with relation to the lots was, but it does not appear that the canal was dug by Glass or for Evans-Benck.
James S. Boyd, a consulting engineer, called on behalf of plaintiff, testified that on September 23, 1965, at one o’clock in the afternoon he made an inspection of Lots 114 and 116 at the request of an agent of Evans-Benck and later that day signed an affidavit which stated that:
“ * * * at the time of said inspection there was no evidence of anything having been done to said land in the nature of the excavation of the same or placing of improvements thereon nor were any materials or equipment incidental to excavating or improving the same stored or placed on, near or about the said land.”
The law determinative of the question presented appears unsettled. Although there is no question that a mortgage is primed by the privilege granted to material-men by R. S. 9:4801 and 9:4812 if it is recorded after labor is performed or materials are furnished for construction or improvement of the immovable mortgaged, the courts of the state have raised a question as to the nature or character of the work required to be done before the mortgage is recorded in order for the materialman’s privilege to come into existence and to be ranked as superior to the mortgage.
In American Bank and Trust Company v. Phillips, (La.App.3rd Cir., 1961), 130 So.2d 750, where the work performed prior to re-cordation of the mortgage consisted of moving small amounts of lumber, pipe and gravel to the property in question, the court argued, in effect, that the work done must be of a sufficiently substantial and conspicuous character as to be reasonably apparent to a mortgagee that construction or improvement had actually begun.
Faced with the same question, arising under similar circumstances, the court in Bank of Morehouse v. Williamson Builders, Inc., (La.App.2d Cir., 1964), 169 So.2d 619, noted that the statements in the American Bank case, supra, were obiter but concluded that the emphasis on the degree and character of work performed was intended as a measure of protection for a mortgagee who inspected the property prior to accepting the mortgage as security for a loan, citing Highland Lumber and Supply Company v. Young, La.App., 38 So.2d 638. The court then dismissed the question by deciding that since the mortgagee made no inspection prior to executing the mortgage the question was purely academic and of no practical relevance in deciding the case.
Finally, this court, in Pringle-Associated Mortgage Corporation v. Eanes, (La.App.1st Cir., 1967, Writs Granted June 6, 1967) 197 So.2d 160, considered the question of non-apparent work on a construction project performed prior to recordation of the mortgage, and after considering the aforementioned jurisprudence, concluded:
“It does, however, seem reasonable that a lender should be in the position to protect *609 his investment, and that he would not be in a position to do so if non-apparent work on some construction project performed prior to the recordation of his mortgage would cause it to become subordinate to materialmen’s liens. We do not feel that the test should be whether such an inspection is actually made, but rather, would such an inspection, if made, reveal that work had already begun. Certainly, the presence of materials on the lot, or the beginning of excavation, however minor, would be sufficient to warn a prospective lender.” Pringle-Associated Mortgage Corporation v. Eanes, supra at 166.
The general principle, therefore, appears to be that when a mortgagee inspects property, prior to accepting the security represented by the mortgage, in order to insure that his security will not be primed by other claims, the work giving rise to a materialman’s lien on the property must be such that' it is apparent and would be revealed upon inspection.
In the instant case, the presence on Lot 115 of a temporary meter loop, consisting of a temporary electric pole and wire, would certainly not give any indication that work had begun on Lots 114 and 116, even if the loop installed on Lot 115 was to be used to supply temporary electricity to all three lots. The testimony of the electrician who installed the loop that Lots 114 and 116 were cleared at the time of this installation is contradicted by that of the person who actually performed the clearing operation. Mr. Glass testified that he “backed”' the undergrowth off Lot 114 and put some dirt that he couldn’t use on Lot 115 in a low spot on Lot 116, making no mention of clearing Lot 116.
Thus, we are left with the testimony of Mr. Glass about the work he did on Lots 114 and 116 in July of 1965 incidental to preparing Lot 115 for the beginning of construction and the fact that this work was visible at the time, and, the testimony and affidavit of Mr. Boyd that on September 23, 1965, there was no evidence that construction work had begun on either lot. This apparent conflict is certainly easy to resolve when one realizes the heartiness of the undergrowth present throughout the state and the vigor and rapidity with which it grows, especially in the summer months.
We can only conclude that the work done on Lots 114 and 116 in July by Mr. Glass, of his own volition and without instruction from Mr. Benck (or should we say ex propre motu et sua spontutue), was not apparent upon inspection and that the mortgage was therefore recorded prior to any work giving rise to the privileges asserted by the intervenors herein.
For the foregoing reasons the judgment appealed from is affirmed at appellants’ cost.
Affirmed.