137 So.2d 336

Cedric FRUGE

v.

Francis S. MUFFOLETTO.

No. 45834.

Jan. 15, 1962.

Rehearing Denied Feb. 19, 1962.

Guillory & Guillory, by Isom J. Guillory, Jr., Eunice, for plaintiff-appellant.

Jacque B. Pucheu, Eunice, Sandoz & Sandoz, Opelousas, for defendant-appellee.

FOURNET, Chief Justice.

This suit by plaintiff Cedric Fruge, for a personal judgment against defendant, Francis S. Muffoletto, with recognition of a labor and material privilege against defendant's property, is pending on appeal to the Court of Appeal, Third Circuit, from the District Court's judgment dismissing the suit on an exception of no cause of action filed by defendant, and is here on questions of law certified to this Court by the Court of Appeal pursuant to constitutional and statutory provisions.[1]

The factual recitation on which the questions are based is that

"This is a suit by a building contractor seeking recognition of a lien in the amount of $4,160.88 for labor and material furnished in the reconstruction and renovation of business premises located on property owned by the defendant. The substantial repairs were made at the order of a tenant to whom the property had been leased.

[1]. La.Const. of 1921, Art. 7, Sec. 25, declares: "Each Court of Appeal shall have power to certify to the Supreme Court any question of law arising in any cause pending before it concerning which, for its proper decision, it desires the instruction of that court; and thereupon the Supreme Court may either give its instruction on the question certified to it, which shall be binding upon the Court of Appeal in such case, or it may require that the whole record be sent up for its consideration, and thereupon shall decide the whole matter in controversy in the same manner as if it had been on appeal directly to the Supreme Court."

R.S. 13:4449 deals also, but in a slightly more detailed manner, with certification by courts of appeal of questions of law or requests for instructions.

"The business premises had been leased for the purpose of operating a 'drive-in' restaurant. By agreement both written and oral between the owner-lessor (defendant herein) and this tenant, the latter was authorized to undertake at his own expense the needed reconstruction to make the premises suitable for the purpose for which leased. The owner had personal knowledge that the reconstruction project was being undertaken and was personally present during the course of the reconstruction, and he had accompanied the tenant to the plaintiff-contractor's office when the plaintiff furnished the tenant an estimate of the cost of the repairs; but the owner did not enter into any of the negotiations between the tenant and the contractor, nor did he indicate any personal responsibility for the cost of the repairs (nor, in fact, did he even know the estimated cost of the repairs). The tenant has since filed a petition in bankruptcy, and (we are informed) the lease between him and the defendant-owner has been terminated."

Following are the questions of law on which instruction is sought:

"1. When repairs and improvements are made by a tenant upon leased premises, and the owner has given the tenant permission to make such improvements, is the contractor entitled under R.S. 9:4801 to a lien for the labor and materials used on the premises?" [2]

2. The pertinent subsections of R.S. 9:4801, as last amended by Act 60 of 1960, declare: "A. Every contractor, sub-contractor, architect, engineer, master-mechanic, mechanic, cartman, truckman, workman, laborer or furnisher of material, machinery or fixtures, exclusive of anyone who rents or leases movable property, who performs work or furnishes material for the erection, construction, repair or improvement of immovable property, or who furnishes material or supplies for use in machines used in or in connection with the erection, construction, repair or improvement of any building, structure or other immovable property, with the consent or at the request of the owner thereof, or his authorized agent or representative, or of any person with whom the owner has contracted for such work, has a privilege for the payment in principal and interest of such work or labor performed, or the materials, machinery or fixtures furnished, and for the cost of recording such privilege, upon the land and improvements on which the work or labor has been done, or the materials, machinery or fixtures furnished.

"B. Except as stated in Sub-Section D of this Section, the privilege given by Sub-Section A of this Section, if evidenced as provided in the applicable provisions of this Sub-Part, is superior to all other claims against the land and improvements except: (1) taxes and local assessments for public improvements if any, and (2) bona fide vendor's privileges or mortgages if the vendor's privileges or mortgages exist and have been recorded before the work or labor has begun or any material has been furnished. * * * *"

"2. That is, under such circumstances is the work performed 'with the consent \* \* \* of the owner' or 'at the request of his authorized agent or representative' so as to entitle the contractor to a statutory lien under R.S. 9:4801?"

"3. Or, instead, does R.S. 9:4811 provide the sole statutory authority for a contractor's construction lien when the contracting party who orders the work is 'other than the owner,' in such case conferring a lien only upon the leasehold rights of the tenant who ordered the work, whether or not the landlord-owner consented to the tenant's contracting for improvement of the property at the tenant's expense?" [3]

The contractor-plaintiff, relying on decisions from the Courts of Appeal for the First Circuit and for Orleans (as then constituted) for the proposition that Section 1 applies when the owner consents, and Section 11 when the owner does not consent or have knowledge of the improvements,[4] and professing inability to reconcile certain decisions of the Court of Appeal, Second Circuit, involving the same Sections but said to reach a different result, contends that the action of a lessee or tenant in causing to be made renovations or improvements to the property of the landlord makes the said property subject to the privilege provided by R.S. 9:4801, when such repairs or renovations are done "with the consent \* \* \* of the owner" of the property, and that the remedy provided by R.S. 9:4811 is simply an additional right given the contractor—one which does not in any way detract from the rights given him by Section 4801. The owner-defendant, on the other hand, emphasizing facts of the instant case favor-

3. R.S. 9:4811 provides: "Where any work as hereinabove set forth is done or buildings or other improvements made, where the person for whom the work is done or with whom the contract is made, or by whom the work is done, is not the owner of the land upon which the work is located, then he shall be subject to all the obligations that are made incumbent on the owner, and the privileges shall operate upon whatever right the said person having the work done or doing the work may have to the use of the land as lessee. The privilege shall operate against the lease such person holds, if there is one, or if the said work is caused to be erected by a mineral lessee, then the privilege shall exist against the mineral lease and whatever rights the lessee may have therein, thereon or thereto. The privileges shall not interfere with the lessor's privilege or his right to demand and recover occupancy of the leased premises in default of the payment of rent, or his right to sell the lease or right of occupancy under any judgment he may obtain against his lessee growing out of the lease. In the case of such sale, the privileges shall be restricted to the proceeds of sale, and shall not follow the property, the lease, or the right of occupancy."

4. The cases relied on are Sirone v. Distefano, La.App., 67 So.2d 150 (First Circuit); Madison Lumber Co. v. Rossi, 18 La.App. 461, 137 So. 221 (Orleans) and Harding v. Wattigney, La.App., 62 So.2d 190 (Orleans).

able to him,[5] and citing cases from the Second Circuit Court of Appeal,[6] denies that R.S. 9:4801 has any application, and submits that by provisions not alone of R.S. 9:4811 but also of Article 3249 of the Civil Code, the privileges exist only against the lease.[7]

In construing a statute, the primary object is to ascertain and, if possible, give effect to the intention and purpose of the legislature as expressed in the statute. Since the meaning is to be determined from a general consideration of the act as a whole, all parts, provisions or sections must be read together; each must be considered with respect to, or in the light of, all the other provisions, and construed in harmony with the whole. The intent as deduced from the whole will prevail over that of a particular part considered separately; mean-

---

5. As recited in defendant's brief—and shown in an agreed stipulation of facts appearing in the record, supported by exhibits and submitted to the lower Court for its decision on the exception of no cause of action—one Emmett M. Bobbett, having begun preliminary negotiations with plaintiff for the desired work and obtained the cost of remodeling the building owned by defendant to meet the requirements of the business which Bobbett proposed to conduct there (a drive-in restaurant), entered into a written five-year lease with defendant, with option to renew, and thereafter agreed orally with plaintiff for the renovation of the premises as lessee thereof; that the lease was promptly recorded; that paragraph 11 provided: "That any and all repairs, changes, and improvements made by the Lessee to the above and herein leased premises, during the primary and/or option term of this lease, shall be at the expense of the Lessee, and that same shall remain the property of the said Lessor, except as provided for in Paragraph 9;" that the agreed-to repair, renovations and construction was completed at a cost of $4,160.88; that demand for payment on Bobbett was unavailing, Bobbett having filed a petition in bankruptcy; and thereafter, within the statutory period, the plaintiff filed a labor and material lien against the property.

6. Shreveport Long Leaf Lumber Company v. Parker, La.App., 144 So. 153;

Shreveport Armature & Electric Works v. Harwell, La.App., 172 So. 463.

7. Article 3249 of the Civil Code, in the Chapter treating "Of Privileges on Immovables," declares: "Creditors who have a privilege on immovables are: * * *

"2. * * * contractors, * * * laborers * * * and other workmen employed in constructing, rebuilding or repairing houses, buildings, or making other works.

"3. Those who have supplied the owner or other person employed by the owner, his agent or subcontractor, with materials of any kind for the construction or repair of an edifice or other work, when such materials have been used in the erection or repair of such houses or other works.

"The above named parties shall have a lien and privilege upon the building, improvements or other work erected, and upon the lot of ground not exceeding one acre, upon which the building, improvement or other work shall be erected; provided, that such lot of ground belongs to the person having such building, improvement or other work erected; and *if such building, improvement or other work is caused to be erected by a lessee of the lot of ground, in that case the privilege shall exist only against the lease and shall not affect the owner.* * * *" (Emphasis that of owner-defendant)

ing should be given, if possible, to each and every section, and the construction placed on one portion should not be such as to obliterate another; so, in determining the meaning of a word, phrase or clause, the entire statute is to be considered.[8] This Court observed in a previous case concerning the instant statute: "* * * we think * * * when read as a whole, those sections throwing any light on other sections being correlated, the act is more comprehensive and is capable of a construction clearly within the intendment of the lawmakers that leads to no absurd consequences, without violence being done to the rule of interpretation that acts in derogation of common rights must be strictly construed." Glassell, Taylor & Robinson v. John W. Harris Assoc., 209 La. 957, 969, 26 So.2d 1, 5.

A careful reading of Act 298 of 1926 enables a clearer understanding of the overall purpose of the subject statute; that Act, relative to the creation of privileges in connection with work on immovable property, replaced earlier legislation on the subject and formed the basic law which, with minor amendments, was incorporated in the Revised Statutes of 1950 as R.S. 9:4801–17. It created, in favor of listed persons who performed work, furnished material or machinery for construction, repair or improvements of immovable property "with the consent or at the request of the owner thereof, or his authorized agent or representative," a privilege for the payment of their claims which was declared to be superior to other claims against the land and improvements (Section 1); required that building contracts be written and recorded, prescribed the method of preserving the privilege created by the statute, and imposed upon the owner the obligation of exacting a bond from the contractor, to be attached to and recorded with the contract, conditioned on the faithful performance thereof and the payment of all claimants, as their interest may appear (Section 2); declared the contractor and his surety to be solidarily liable for all labor and materials used in the work (Section 3); prescribed the method of procedure whereby the owner who has exacted bond from the contractor may obtain the release of his property from the privileges arising out of the contract (Sections 4 and 5); decreed the liability of the owner in the event of his failure to obtain a sufficient or an effective bond (Section 6); provided full recourse against the surety to the amount of the bond in event of the owner's failure to record the contract and bond, or failure to obtain a sufficient bond (Section 7); authorized that a building contract provide for partial payments as the work progressed (Section 8); dealt with the rank of the privileges and

8.  82 C.J.S. Verbo Statutes §§ 345, 346, p. 691.

their pro rata payment in event of necessity (Section 9); treated of concursus proceedings, attorney's fees and court costs (Section 10); provided that where the person for whom the work was done or the improvements made, or with whom the contract was made, was not the owner of the land upon which the work was located, "then he shall be subject to all the obligations that are made incumbent on the owner by this act, and the liens and privileges * * * shall operate upon whatever right said person having the work done or doing the work may have to the use of the land as lessee; and said lien and privilege shall operate against the lease such person holds, if there is one * * *" (Section 11); decreed the personal liability of the landowner, as well as the subjection of the immovable to a "lien and privilege," if no contract is recorded or if the owner fails to take other action prescribed by the statute (Section 12); created a privilege in favor of architects and engineers for the payment of their contract charges (Section 13); dealt with the remedies against the surety (Section 14), the fees for recording (Section 15), and declared that the manner and method of creating and preserving the privileges specified therein was exclusive (Section 16). For the purposes of this decision, the law today as set forth in R.S. 9:4801–17 is substantially as stated above.

■ Applying the rules of construction previously alluded to, we find that the object of the legislation is, first, to protect the claims of all persons who, for the account of the owner, contribute their labor, skills, materials, equipment, or furnish machinery in connection with the erection, construction, repair or improvement of immovable property, by creating privileges in favor of those claimants on the structure and the land upon which it stands; second, to protect the owner of the immovable from the operation of such privileges by requiring the contractor to execute a bond for that purpose; and third, to subject a person *not* the owner of· the immovable who has work done thereon to all the obligations placed on the owner (i. e., written contract, bond, recordation, etc.), in which case (i. e., where the work is done for a non-owner) the privileges in favor of the claimants operate on whatever right the non-owner has to the use of the land. To so construe the terms of the statute meets the requirements of strict construction and gives effect to all provisions with a view to a harmonious whole.

■ We are fortified in this view by the further provisions of R.S. 9:4811 which prescribe, in plain and unambiguous language, that "The privilege shall operate against the lease such person holds, if there is one * * * The privileges shall not interfere with the lessor's privilege or his right to

demand and recover occupancy of the leased premises in default of the payment of rent, or his right to sell the lease or right of occupancy under any judgment he may obtain against his lessee growing out of the lease. In the case of such sale, the privileges shall be restricted to the proceeds of sale, and shall not follow the property, the lease, or the right of occupancy." This provision would be rendered totally meaningless, would, in fact, be deleted, if the remedy provided by R.S. 9 :4811 were simply an additional right to that given by R.S. 9 :4801.[9] Such a construction, urged by the contractor in this case, must be rejected for one that is within the reason and the spirit of the law—the more so since statutes creating civil penalties and privileges are not to be extended by implication or through considerations of equity. American Creosote Works v. City of Natchitoches, 182 La. 641, 646, 162 So. 206, and authorities cited.

■ We therefore hold that mere consent or acquiescence of the owner to work being done on leased premises by the lessee or as a result of a contract awarded by the lessee is not sufficient to render the land and improvements subject to the privilege for material, labor, and similar services imposed by R.S. 9 :4801; nor does the owner's knowledge of improvements on the premises make the employer his, the owner's agent, so as to impose liability on the owner for wages, materials or claims of the employer's workmen. This is not to say, however, that the owner, through his conduct, may not under certain circumstances create an estoppel which will prevent his contesting the rights of the materialman, laborer, or similar claimant.

A study and perusal of the various cases relied on by the plaintiff-contractor will readily disclose that they are based on dissimilar factual backgrounds; therefore, an analysis of the reasoning and result in each decision would only lengthen this opinion without serving any useful purpose.

Accordingly, the answers to the questions propounded are, as to No. 1, negative; as to No. 2, negative; and as to No. 3, affirmative.

---

9. The meaning of the quoted portion is perhaps even clearer in the source of R.S. 9 :4811 and prior laws, where the language appears as a proviso: " * * * and said lien and privilege shall operate against the lease such person holds, if there is one * * * provided, however, that the privileges hereby created shall not interfere with the lessor's lien and privilege or his right to demand and recover occupancy of the leased premises in default of the payment of rent, or his right to sell the lease or right of occupancy under any judgment he may obtain against his lessee growing out of the lease; and in the case of such sale, the privileges herein created shall be restricted to the proceeds of sale, and shall not follow the property, the lease or the right of occupancy." Section 11 of Act 298 of 1926, and Section 3 of Act 139 of 1922.