208 So.2d 346 (1968)
PRINGLE ASSOCIATED MORTGAGE CORPORATION et al.
v.
Ernest R. EANES, Jr., et al.
No. 7280.
Court of Appeal of Louisiana, First Circuit.
March 4, 1968.
Rehearing Denied April 8, 1968.
Writ Refused June 4, 1968.
*347 Frank P. Simoneaux and Victor A. Sachse, of Breazeale, Sachse & Wilson, Robert C. Taylor, Baton Rouge, for Pringle Associated Mortgage Corporation & Ross E. Cox.
Doris Gates Rankin, Baton Rouge, for J. R. McFarland.
George S. Womack and Douglas M. Gonzales, Baton Rouge, for Livingston Roofing & Sheet Metal Co., Inc.
R. Gray Sexton, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for Capitol Detective Agency, Inc.
Ernest R. Eldred, Baton Rouge, for Seaborn R. Wicker, Jr., Assignee of Rawlins Electric, Inc.
Before LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
The pivotal issue presented on this appeal by plaintiff, Pringle Associated Mortgage Corporation (Pringle), is one of law, namely, does a subcontractor who pays his laborers their wages when due in the ordinary course of business, for labor performed on a private construction contract, become subrogated by operation of law to the laborers' lien and privilege against the property involved and the owner thereof pursuant to LSA-R.S. 9:4801 and 9:4812? In answering the question in the affirmative, we think the trial court erred. In addition to the foregoing point, certain ancillary contentions are presented but are rendered moot by our decision on the stated prime interrogatory.
No dispute exists as to the essential facts and circumstances of the present inquiry which may be summarized thusly: Pringle is the holder of a duly recorded mortgage in the sum of $335,000 granted by defendant Ernest R. Eanes, Jr. (Eanes) on the Plantation Trace Apartment Project located in East Baton Rouge Parish, said mortgage being given in security for a note in like amount. It became necessary for Pringle to foreclose its mortgage in which proceeding Pringle became the purchaser of the hypothecated property at sheriff sale, subject to all liens and encumbrances which might prime Pringle's rights under its mortgage. There being numerous liens filed against subject property for allegedly unpaid laborers' wages and materials reputedly furnished for the project in question, Pringle ruled all lienors to show cause why their liens should not be cancelled insofar as they purported to affect the property in question. Of the thirty-two liens claimants, the rights of three were held by the trial court to prime appellant's mortgage, namely: Livingston Roofing and Sheet Metal Co., Inc., in the sum of $2,961.74; J. R. McFarland, d/b/a United Masonry Company, aggregating $5,606.86, and Capitol Detective Agency, Inc., amounting to $1,446.26.
It is conceded the claim of Livingston Roofing and Sheet Metal Co., Inc. represents the sum of $1,471.50 paid its employees in wages, including some wages for labor performed off the construction site in fabricating certain components incorporated into the project and also includes the sum of $1,490.24 paid another subcontractor. McFarland's claim is acknowledged to be in the sum of $3,214.24 paid his employees as wages and also wages in the aggregate of $2,396.62 for labor personally performed on the construction by McFarland notwithstanding he was a subcontractor of the masonry work involved. Similarly, all litigants agree the claim of Capitol Detective Agency, Inc. represents salaries paid two night watchmen assigned to protect the apartment project during the construction period. It is also agreed that all of the laborers' *348 wages involved herein were paid by their respective employer-lienors promptly when due and that no lien was filed by any laborer except McFarland against the project in question. Finally, it is acknowledged that the three lienors hereinabove named were all subcontractors of the prime contractor, Buddy Eanes Home Builders, Inc., and that each said subcontractor timely filed a lien in his own name for the purposes and in the amounts previously indicated.
Lienors concede the absence of a conventional act of subrogation from either the prime contractor or owner of subject property and admit the subrogation herein advocated is subrogation of right or legal subrogation provided for by LSA-C.C. Article 2161.
Appellant's basic contention is that the trial court erred in holding legal subrogation resulted under the circumstances noted inasmuch as the legal relationship existing between the laborers, subcontractors, prime contractor and owner do not fall into either of the four categories provided in Article 2161, supra, in which subrogation is said to occur as a matter of right.
Lienors, however, rely upon Tilly v. Bauman, 174 La. 71, 139 So. 762, which they argue is squarely in point and therefore determinative of the case at hand. It does indeed appear that Tilly v. Bauman, supra, is indistinguishable from the present matter. We note in the cited case the liens involved are referred to solely as follows: "The contractor defaulted in the building, leaving numerous unpaid liens upon it." At first glance, the quoted language would appear to at least infer the liens alluded to were those of laborers whose wages were unpaid which circumstance, if true, would certainly differentiate Tilly v. Bauman from the case now before us. However, counsel for lienors appends to her brief certain excerpts from the transcript of testimony taken in Tilly v. Bauman which indicate the liens involved were filed by subcontractors only. If this be true (and we accept it as so for the present discussion), it follows that Tilly v. Bauman is factually indistinguishable from the case at bar.
Conceding (on the basis of the foregoing) that Tilly v. Bauman is in point, nevertheless, with all due respects, we decline to apply the ruling in the cited authority to the instant case. We so demur because the cited authority standing alone in the jurisprudence appears to be squarely in conflict not only with the French interpretation of the operation of the comparable article of the Code Napoleon, upon which our own subrogation law is predicated, but also contrary to certain prior pronouncements of our own Supreme Court on the subject of subrogation as we shall hereinafter attempt to demonstrate.
Readily acknowledging our duty and obligation to follow and apply the decisions of the Supreme Court when its rulings are clear and unambiguous, we also are under the obligation of pointing out those instances wherein we find conflicting views expressed by our superiors. Where such conflict exists, we are disposed to follow the view which appears to us most sound. We do so in order that such conflicts may be resolved by a reconsideration of the issues by the Supreme Court to the end that all resulting uncertainties may be resolved and removed.
Unquestionably the issue presented is one of grave and far reaching importance considering the extent of modern day construction. Any uncertainty regarding the question should, we believe, be set at rest once and for all by a decision which not only pronounces a certain result but does so upon reasoning which harmonizes the ruling with all principles of law involved. Only such a decision can result in an opinion of value to laborers, contractors, subcontractors and owners alike.
We note that in Tilly v. Bauman, supra, the court did not consider the operation and nature of subrogation in depth. It merely contented itself with a reference to the applicable statute and concluded legal *349 subrogation resulted therein. Neither did the court view the subject matter in the light of its own previous holding that the terms of the lien statutes are to be strictly construed and are not to be enlarged or expanded either by inference or upon application of equitable consideration.
The reason, of course, appellees seek to establish legal subrogation herein is that laborers' liens prime all claims against construction, even previously recorded mortgages such as that held by Pringle. In this regard it is noted that LSA-R.S. 9:4801, subd. D expressly provides that the claim for laborers' wages primes the rights of mortgagees and vendors and LSA-R.S. 9:4812, which deals with unwritten and written but unrecorded contracts, also specifically accords preference to laborers' claims for wages over the rights of mortgagors and vendors.
LSA-C.C. Article 2161 provides that legal subrogation takes place in four particularly enumerated circumstances, only two of which could possibly apply in the case at hand. We therefore quote the pertinent portion of the article as follows:
"Article 2161. Subrogation takes place of right:
1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.

* * * * * *
3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.

* * * * * *
It is settled jurisprudence that LSA-R.S. 9:4801 and 9:4812, being in derogation of the common rights of owners and mortgagees, must be strictly construed and are not to be extended beyond their express terms. Lumber Products, Inc. v. Crochet, 244 La. 1060, 156 So.2d 438.
It has also been held the nature of the applicable lien statutes requires their being classified stricti juris from which it follows they are to be rigidly interpreted and the privileges therein conferred shall not be extended or enlarged either by implication or the application of equitable considerations. Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336.
The entire rationale of Tilly v. Bauman, supra, is expressed in the following language contained therein:
"These two claims involve exactly the same point of law, which is this, Is a subcontractor who pays off his laborers employed by him subrogated to the lien rights of such laborers?
We think he is. Under the statute, the building (and therefore, in effect the owner of the building) is liable for the workmen's wages, because they have a lien on it; the subcontractor is of course liable for these wages, because he employed the men. Again, since the laborer's lien primes the mortgage and the subcontractor's does not, the laborer's lien is necessarily preferable to that of the subcontractor.
We have therefore before us both cases provided for by the Civil Code, art. 2161, R.C.C. which provides as follows:
"Subrogation takes place of right:
"1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages. * * *
"3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.'"
We fail to see how the subcontractors in question could conceivably fall within the provisions of LSA-C.C. Article 2161, paragraph 1, allowing subrogation in favor of a creditor who pays a creditor possessing a preferred claim. In these instances neither *350 the subcontractor nor the owner of the property is a creditor of the laborer engaged to work on the project. On the contrary, the subcontractor rather than being a creditor is the debtor primarily responsible for the wages of the laborers he employs. The owner is certainly not a creditor of the laborer. That the owner may be a potential debtor if and when the laborer files a lien for unpaid wages does not place the owner in the classification of either debtor or creditor of the laborer who is paid his wages promptly when due and files no lien as required by the pertinent lien statute. Until the laborer actually files his lien in compliance with the statute, he has no claim against either the property or its owner even though his wages have accrued but remain unpaid. The mere failure to pay earned wages when due does not ipso factor give rise to the lien but rather creates the inchoate right thereto, which right becomes an existing, vested privilege upon recordation of the required affidavit in the form and within the time prescribed by law.
Our LSA-C.C. Article 2161, with certain inconsequential changes, is taken from Article 1251 of the Code Napoleon. In discussing the nature and operation of subrogations as contained in the Napoleonic Code, the noted French commentator Planiol observes as follows:
"We can now define the entire operation. The payment with subrogation is a payment not liberating for the debtor, because it is not done by him, and the subrogation which accompanies it is a juridical operation by virtue of which the credit paid by the third party subsists for his benefit, and is transmitted with all its accessories, even though it is considered as extinguished with relation to the creditor." 2 Planiol Civil Law Treatise (An English Translation by the Louisiana Law Institute) No. 477, Page 273 (1959).
From the foregoing it appears that for subrogation to accompany payment as a matter of right, payment must be by a third party for the benefit of the debtor who is not liberated from the obligation because the debtor himself has made no payment to the creditor. Inasmuch as the debtor is not freed of his obligation by such a payment, the credit paid by the third party is in effect transmitted to the third party payor who becomes substituted to the rights of the former creditor.
In commenting specifically upon subrogation of right, Planiol states:
"In quite a number of cases he who pays the debt of another has no need to obtain conventional subrogation, because the law subrogates him as a matter of right to the action of the creditor. These cases are enumerated in Art. 1251. All are based on the idea of an implied subrogation. It can be thus explained: in certain circumstances the person who pays for another is legally required to do so, or at any rate there exists a considerable interest, either on his part, or on the part of the debtor, that he pay in the place of the latter. The law therefore provides that this payment for another be made, and in order to facilitate it, it implies the subrogation; it would be unjust for the creditor to refuse it: the debtor is therefore dispensed from demanding it, and it is conferred on him by law." 2 Planiol, Page 277, Par. 491.
In a footnote to the above commentary, Planiol demonstrates that legal subrogation does not take place in those instances wherein a debtor pays his own debt and not that of another:
"27. In maritime insurance, it is admitted that the insurer paying the insured is subrogated by law to the recourse of the insured against the third party responsible (Cass., 2 July 1878, D. 78.1.345; Cass., 3 Feb. and 5 Aug. 1885, D. 86.1.173; Cass., 10 Jan. 1923, P. & S. 1924.1.257). But in reality there is not here a veritable subrogation, for the insurer does not pay the debt of a third party, but his own; there is a cession *351 of the action. See Labbe', Note in S., 1880.1.441 and G. Ripert, Droit maritime, 2nd Ed., t. III, No. 2793.The jurisprudence does not admit this legal subrogation in the other kinds of insurance (Cass.Civ., 12 Nov. 1928 D.H.1928, 605)." (Emphasis by the Court.) 2 Planiol, Footnote 27, Page 278.
Moreover, it seems that in New Orleans National Bank v. Eagle Cotton Warehouse and Compress Co., 43 La.Ann. 814, 9 So. 442, the Supreme Court recognized and applied Planiol's conception of the nature and operation of subrogation by holding that legal subrogation does not take place when one pays a debt for which he is primarily liable. In the cited authority the syndics of the debtor Lallande claimed subrogation to the rights of a certain mortgage creditor to whom Lallande made payments on notes given to secure a portion of the purchase price of certain lots bought by Lallande from the heirs of one Morand. Lallande subsequently sold the same property to defendant who executed several notes in payment of the price and also assumed payment of the Lallande notes. Some of Lallande's notes as well as those of defendant became the property of plaintiff who executed thereon. In the distribution of the proceeds of the foreclosure sale, the syndics of Lallande claimed subrogation to the payments made by Lallande while Lallande was still bound. In rejecting the syndics' contention, the Supreme Court stated:
"The question for decision is whether the district court erred in refusing to hold that the insolvent estate of Lallande became legally subrogated to the superior rights and privileges of the persons to whom he and his syndic had made payments; and therefore in refusing to decree the syndic entitled to be paid by preference over the plaintiff. From the facts appearing in the precedent statement, Lallande was, at the time he made the payment of interest on the three notes that were held by Horine, still bound as the original obligor thereof, capital and interest, notwithstanding the defendant had assumed their payment and had contracted and covenanted to discharge him from his obligation as a part of the price of the property mortgaged. There is no proof that Horine had ever consented to Lallande's discharge, and the counsel for the syndic concedes that he was not released. This being the case, it seems to be a very clear proposition of law that inasmuch as Lallande volunteered to make a payment of interest on notes of which he was the maker, and on which he was still bound as obligor, he only pro tanto discharged his own debt, notwithstanding the defendant was also bound for same. In such case legal subrogation does not take place. The precepts of the Code governing legal subrogation are the following, viz.: `Subrogation to the right of a creditor in favor of a third person who pays him is either conventional or legal.' Rev. Civil Code, art. 2159. `Subrogation,' i. e., legal subrogation, `takes place of right (1) for the benefit of him who, being himself a creditor, pays another creditor whose claim is preferable to his by reason of his privileges or mortgages.' Id. art. 2161. It is of the essence of the legal subrogation which is defined in the foregoing paragraph that the person making payment should be a third person in respect to the obligee of the debt he is seeking to prime by making the payment, and also that such payor should himself be a creditor of inferior rank of the common debtor whose debt he pays. But Lallande was not only not a third person in respect to the obligee of the debt he sought to prime, but he was himself the original obligor, and more recently the plaintiff's pledgeor. Lallande was not himself a creditor of the defendant at the time he made the payment of interest, quod the plaintiff, to which he had surrendered, as pledgee, the notes which evidenced his ownership thereof. * *"
In effect the subcontractors herein involved contend they are solidarily liable *352 with the owner for payment of the laborers' wages consequently upon paying the debt they become subrogated to the laborers' rights as they have discharged the debt of a party with whom or for whom they are bound. On this premise they assert legal subrogation pursuant to LSA-C.C. 2161(3).
In commenting upon the comparable provision of Code Napoleon, Article 1251, Planiol declares:
"Persons Benefiting from this Law
Those bound with others are:
(1) Solidary obligors.
(2) Co-debtors of an indivisible obligation.
(3) Different sureties of the same debt, in their relations to each other; each one of them in paying the whole pays his own debt at the same time as that of the others.
Those held for others are:
(1) The surety in his relations with the debtor;
(2) The `real' surety (proprietor who has mortgaged his immovable for the debt of another without obligating himself.)
(3) The third party who has acquired a mortgaged immovable, who pays the creditors who have mortgages on the property which he has acquired. It is assumed that the third party is not personally obligated for the debt, neither as principal debtor nor as surety and that he did not himself mortgage the property. It makes no difference whether he acquired by purchase, donation, exchange, legacy, etc." 2 Planiol, Page 282, Sec. 501.
Our own rules concerning solidary liability are found in LSA-C.C. Articles 2091-2093, inclusive, which provide:
"Art. 2091. There is an obligation in solido on the part of the debtors, when they are obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor.
"Art. 2092. The obligation may be in solido, although one of the debtors be obliged differently from the other to the payment of one and the same thing; for instance, if the one be but conditionally bound, whilst the engagement of the other is pure and simple, or if the one is allowed a term which is not granted to the other.
"Art. 2093. An obligation in solido is not presumed; it must be expressly stipulated.
This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law."
From the foregoing it is clear that solidary liability arises only when debtors are obligated to the same thing. Under such circumstances the debtor who pays exonerates his co-debtor from claims of the common creditor, thus extinguishing the obligation insofar as concerns the creditor but not liberating the common debtor who has made no payment thereon.
Applying these rules to the case at hand, the subcontractors and owner were not and indeed could not have been solidarily liable to the laborers whose claims are herein asserted. Under the circumstances herein the owner was never liable to the laborers as no liens were filed by any party occupying such status. Under the lien law, no liability arises on the part of the owner until the lien is recorded. Since the owner was never liable to the laborers, it necessarily follows he was not liable for such wages, solidarily or otherwise, with those primarily obligated for the wages earned.
In the instant case when the subcontractors herein involved paid the wages for which they now claim subrogation, said subcontractors were the sole debtors and prime obligors of the laborers concerned. At that time the subcontractors were not *353 liable with or for the owner because no liens then existed in favor of the laborers whose wages were paid. As hereinabove previously shown, the mere earning of wages by performing work on a given project does not per se vest the laborer with a claim or right against the property and its owner. If the laborer is paid his wages, not even the right to a lien arises inasmuch as the indispensable requirement of the statute is thus lacking, namely, unpaid wages due a laborer. Further, assuming earned wages remain unpaid, no claim arises in favor of the laborer against the project and its owner until and unless notice is given through the medium of a lien filed in compliance with the pertinent statute. The inchoate right which springs into existence when earned wages remain unpaid continues as a mere potential claim against the owner and has no legal substance or effect until manifest as the statute dictates.
Pringle concedes that the claim of J. R. McFarland includes the sum of $2,396.62, representing labor personally performed by J. R. McFarland on the project. That McFarland was also a subcontractor is a matter of no moment. Since this sum is for laborer's wages earned and unpaid, it matters not that the laborer was a subcontractor. The lien affidavit, appearing of record, is signed by McFarland, alleging a balance due for labor performed during a stated interval. This suffices to put the owner on notice. See LSA-R.S. 9:4802. The fact that the affidavit relates that the amount due is for laying bricks at a unit price per thousand is a matter of no moment. McFarland's deposition expressly recites the amount claimed is for labor performed in furnishing the services of laying bricks. It, therefore, fulfills the statutory requirement by indicating the amount claimed is for labor performed on the project. Since McFarland timely filed his lien for the wages earned and unpaid, he is entitled to a lien and preferential payment of said sum.
Appellant alternatively resisted the claims of Livingston Roofing and Sheet Metal Co., Inc., J. R. McFarland d/b/a United Masonry Company, and Capitol Detective Agency, Inc., on the ground that as regards the former, some of the labor involved was performed off the premises in fabricating certain components incorporated into the works. As concerns the latter, it is contended that since detectives who merely guard a work, do not perform construction work on the project, their services do not fall within the ambit of the lien statute.
In view of our determination that subrogation did not take place herein, it is unnecessary to consider these alternative arguments. Assuming arguendo, the claims mentioned fall within the scope of the lien law, the parties filing the liens in question did not become subrogated thereto.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court declaring the liens and claims of appellees, Livingston Roofing and Sheet Metal Co., Inc., J. R. McFarland d/b/a United Masonry Company and Capitol Detective Agency, Inc., are valid, be and the same is hereby annulled, reversed and set aside and said liens ordered cancelled and erased from the mortgage records of East Baton Rouge Parish, except as hereinafter otherwise specifically set forth.
It is further ordered, adjudged and decreed that the mortgage of Pringle Associated Mortgage Corporation be declared superior in rank and entitled to payment with preference and priority over all liens for labor filed herein excepting that lien for labor in favor of J. R. McFarland d/b/a United Masonry Company, in the sum of $2,396.62.
It is further ordered, adjudged and decreed that this matter be remanded to the lower court for further proceedings consistent with the views herein expressed. All costs to be paid by appellees, Livingston Roofing and Sheet Metal Co., Inc. and Capitol Detective Agency, Inc.
Reversed and remanded.