SAMUEL, Judge.
After delivering sand fill having a stipulated value of $1,174.50 to Lots 3 of Square “G” and Lots 4 and 7 of Square “H” in Belmont Place Subdivision, Parish of Jefferson, and after recording affidavits of his claim for labor and materialmen’s liens thereunder, plaintiff filed this suit seeking: (1) an in solido judgment in that amount against the four defendants named in the petition; and (2) recognition of his alleged liens upon the property. On plaintiff’s subsequent motion two of the defendants, Dublin Construction Co., Inc. and Wilco Builders, Inc., were dismissed from the suit without prejudice and the matter went to trial only as to the two remaining defendants, Michael J. DeGeorge and Star Home & Development Corp.
After trial there was judgment in favor of plaintiff and against DeGeorge and Star Home, in solido, in the full sum of $1,174.50. The judgment also recognized and maintained plaintiff’s liens and privileges and decreed that in due course the property be seized and sold to satisfy the amount of the *259 money judgment. DeGeorge and Star Home have appealed.
DeGeorge, a man named Clifford W. Sherman, and the latter’s son were engaged in the business of constructing “speculation” homes for the purpose of later sale by the builders. Those three individuals owned all of the stock in Wilco. Sherman was the vice president and DeGeorge the secretary-treasurer of that corporation. They had a working agreement with a New Orleans homestead under which the homestead would finance their construction.
In connection therewith, and prior to the ordering or furnishing of the sand fill, an agreement was entered into with Dublin Construction Company for the purchase of the three lots in suit. Although the record does not contain the original or a copy of that agreement, it appears it was entered into by Dublin and Wilco with Sherman appearing for Wilco as vice president. On September 23, 1966, DeGeorge paid Dublin the sum of $19,500 from his personal funds. According to DeGeorge’s testimony, ■ that amount included the full sale consideration called for by the purchase agreement with Dublin and other contemplated purchases from that corporation. The act of sale was not passed when the $19,500 payment was made because DeGeorge intended to include all of the purchases from Dublin in one act (an intention which did not become a reality), and the acts involving the lots in suit were passed on August 8, 1967. On that date Dublin transferred only those three lots to Dixie Homestead Association and, for a stated consideration of $12,600, Dixie transferred the same property to De-George and Star Home & Development Corp. . The acts were duly registered in the Conveyance Office of the Parish of Jefferson on August 11, 1967.
The sand fill was ordered by Sherman and furnished by plaintiff during the month of October, 1966. The understanding between those parties was that plaintiff was to be paid for the fill on each lot when each slab had been poured, that being the time when the first construction money would be due from the homestead. Plaintiff billed Waco for the fill and his subsequent frequent requests for payment were met with Sherman’s explanation that the money would be forthcoming only after construction had begun. Later the homestead informed Sherman and DeGeorge there would be no money available for construction purposes, no construction was ever begun on the lots in question, and the bill never was paid.
Thereafter, because money for construction was unobtainable, the business relationship between Sherman and DeGeorge was severed and Sherman was no longer interested in the purchase of the lots. De-George then acquired ownership in the property by the act of sale from Dixie to himself and Star Home on August 8, 1967. Later DeGeorge put “For Sale” signs on the lots and those signs remained there for two or three months. Plaintiff’s affidavits for labor and materialmen’s liens were recorded on November 21, 1967, immediately or shortly after plaintiff had been informed by Sherman that plans for construction on the lots had been definitely abandoned.
In this court appellants contend recognition and maintenance of liens in favor of plaintiff was erroneous because: (1) the work was not done, and the fill was not furnished, with the consent or at the request of the owner, as required by LSA-R.S. 9:4801; (2) the affidavits of plaintiff’s claim for liens were not filed timely under the provisions of LSA-R.S. 9:4812 (the trial court found there had been no abandonment under the doctrine of Gaston v. Stover, La.App., 126 So.2d 360; R. F. Mestayer Lumber Company v. Tessner, La. App., 101 So.2d.238, and Cain v. Central Plumbing & Heating Company, La.App., 85 So.2d 376, which doctrine defendants argue is inapplicable here) ; and (3) plaintiff was a general contractor and therefore not entitled to a lien in the absence of a proper recorded written contract as required by LSA-R.S. 9:4802, citing State ex rel. Bagur Co. v. Christy-Ann-Lea Corp., La.App., 223 *260 So.2d 421. Because of our conclusion thereon we find it necessary to consider only the first contention.
The lien and privilege plaintiff seeks is provided for by LSA-R.S. 9 :4801 et seq. Under that statutory law, as there was no recorded written contract, he can have a valid labor and materialmen’s lien only if he furnished the fill with the consent or at the request of the owner of the property. In pertinent part LSA-R.S. 9:4801 grants the privilege, upon the land on which the work was done or materials furnished, to specified parties who perform work or furnish materials for the improvement of immovable property “ * * *, with the consent or at the request of the owner thereof, or his authorized agent or representative, * * *.” The statute must be strictly construed and cannot be extended or enlarged by implication or through equitable considerations. Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336; Security Homestead Association v. Schnell, La.App., 232 So.2d 898, handed down March 9, 1970; Pringle Associated Mortgage Corporation v. Eanes, La.App., 208 So.2d 346.
Dublin was the record owner of the three lots in question from 1960 until it transferred the. property to Dixie Homestead on August 8, 1967 (subsequent to the ordering and furnishing of the fill during the month of October, 1966) and that act was registered three days later. The only reference to Dublin in the record is that as owner of the property it contracted to sell the same to Wilco and later transferred the lots to DeGeorge and Star Home. There is no evidence tending to establish, nor is any contention made, that Dublin consented to or requested the furnishing of the fill by plaintiff or that it was even aware of that transaction. It follows that if, within the contemplation of LSA-R.S. 9:4801, Dublin was the owner of the property at the time the fill was ordered and furnished, the statutory requirement that the same must have been done with the consent or at the request of the owner has not been met and plaintiff does not have a lien or privilege on the property to secure payment for his work and for the sand fill he furnished. Fruge v. Muffoletto, supra; Security Homestead Association v. Schnell, supra.
We find no merit in plaintiff’s argument that Wilco, which through Sherman ordered the fill from plaintiff, became the owner of the property by reason of the written purchase agreement between Wilco and Dublin and the payment of the purchase price by DeGeorge. If Wilco did have a valid, written purchase agreement with Dublin, and if the entire purchase price called for by agreement was paid by De-George for Wilco, these facts would not change the actual ownership of the property for the simple reason that title was never transferred out of Dublin until that corporation later sold to DeGeorge and Star Home. Insofar as ownership is concerned, Wilco never acquired anything more than a cause of action for specific performance under LSA-C.C. Art. 2462.
Nor did DeGeorge, as a result of the aforesaid purchase agreement and payment of the purchase price, become an owner prior to his acquisition with Star Home from Dublin. Whatever understanding DeGeorge may have had with Dublin (and the only evidence in the record on that point is DeGeorge’s testimony that at the time he paid the $19,500 to Dublin the “understanding” between that corporation and himself was that it would later transfer the property to him or to his designate) no transfer was in fact made, and he did not become an owner of the property, until his acquisition with Star Home from Dublin. Because the understanding between Dublin and DeGeorge was not in writing as it had to be in order to be effective, it is apparent that the latter did not acquire even a cause of action under which (in the absence of a Dublin confession on oath) he could force Dublin to make the transfer. LSA-C.C. Arts. 2275, 2240 and 2462.
We conclude that at all times material thereto Dublin was the owner of the prop *261 erty. And as plaintiff did not furnish the sand fill in suit with the consent or at the request of Dublin, he can have no valid labor or materialmen’s lien under the specific provisions of LSA-R.S. 9:4801.
Insofar as the balance of the judgment is concerned, we find there can be no liability on the part of Star Home. There is no evidence indicating that corporation was in any manner involved with the fill furnished by plaintiff. Star Home’s only connection with this suit is that it was a part owner of the three lots subsequent to the August 8, 1967 date of the acquisition by itself and DeGeorge from Dublin. De-George testified, and the record contains no other evidence on the subject, that he “made a connection” with Star Home in April or March, 1966, a date five or six months after the bill had been furnished by plaintiff. We know of no theory of law under which there can be a personal judgment against Star Home.
We further conclude that the personal judgment against DeGeorge for the amount in suit is correct. The tenor of all of the testimony given by both DeGeorge and Sherman is that they considered themselves “partners” in their business venture of building “speculation” homes and the record as a whole satisfies us that, in the conduct of their construction business, they acted in their individual capacities rather than in their capacities as officers of Wilco, with the intention of using the Wilco corporate entity only when and if such use suited their purpose and convenience.
To give one example of the manner in which they conducted the business: Although the testimony of both DeGeorge and Sherman is that the parties to the agreement to purchase and sell the property upon which the liens are sought to be enforced were the two corporations, Wilco and Dublin, Sherman also testified, and De-George substantially confirmed without contradicting in any manner, that when Sherman was no longer interested in continuing the business relationship with De-George because there would be no further financing, he informed DeGeorge: “I just told him I didn’t want any part of them [the lots] any more, because I couldn’t get money to build on them. And if he wanted them he could take them. I wasn’t in a position to take them.” Thereafter Wilco appears to have been ignored and DeGeorge had the lots transferred from Dublin to himself and Star Home.
Under these circumstances when Sherman ordered the sand fill he was, with the full knowledge and consent of DeGeorge, acting for himself and the latter in furtherance of their joint business venture and DeGeorge is responsible for the cost of the fill furnished by plaintiff.
For the reasons assigned, the judgment appealed from is amended and recast so as to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, L. C. McCulley, d/b/a L. C. McCulley Construction & Dozer Works, and against the defendant, Michael J. DeGeorge, in the full sum of One Thousand One Hundred Seventy-four and Fifty ($1,174.50) Dollars, together with legal interest thereon from date of judicial demand until paid.
It is further ordered, adjudged and decreed that there be judgment in favor of the defendant, Star Home & Development Corporation, and against the plaintiff, L. C. McCulley, d/b/a L. C. McCulley Construction & Dozer Works, rejecting and dismissing the said plaintiff’s demand against that defendant.
It is further ordered, adjudged and decreed that the plaintiff, L. C. McCulley, privileges against the property described as Lot 3 of Square “G” and Lots 4 and 7 of Square “H”, Belmont Place Subdivision, Parish of Jefferson, be cancelled and erased from the Mortgage Records of Jefferson Parish, particularly from MOB 502, Folio 857 and MOB 502, Folio 858.
*262 It is further ordered, adjudged and decreed that the plaintiff, L.C. McCulley, d/b/a L. C. McCulley Construction & Dozer Works, pay all costs of this appeal and the defendant, Michael J. DeGeorge, pay all costs in the trial court.
Amended, recast and affirmed.