CUTRER, Judge
(dissenting).
I cannot agree with the conclusions reached by the majority in this case. In construing a statute, the primary object is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in the statute. Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336.
The majority opinion places an interpretation upon the provisions of the Uniform Fiduciaries Act, which in my opinion *21 does not give effect to the intention and purpose of the Legislature. If inequities should result from the construction and ef-fectuation of a statute then the duty of correcting such inequities addresses itself to the Legislature and not to the courts.
The majority holds that LSA-R.S. 9:-3808 does not apply, and in doing so reverses the trial court which allowed recovery under the reconventional demand of the Trustee in Bankruptcy on behalf of C & R Development Co., Inc.
LSA-R.S. 9:3808 provides as follows:
“If a check is drawn upon the account of his principal in a bank by a fiduciary who is empowered to draw checks upon his principal’s account the bank is authorized to pay any such check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such check, or with the knowledge of such facts that its action in paying the check amounts to bad faith. If, however, such a check is payable to the drawee bank and is delivered to it in payment of, or as security for, a personal debt of the fiduciary to it, the bank is liable to the principal, if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check.”
(Emphasis ours.)
The italicized portion of 9:3808 raises the legal issue involved in this case.
The majority takes the position that since Mrs. Rolen signed the checks as a co-signor or co-fiduciary, Section 3808 is not applicable on the ground that the provisions of 3808 refer to the acts of only one fiduciary.
In an informative article, 6 Tulane Law Review, 618, is found the following comments concerning the background, intent and effect of this provision in the Uniform Fiduciaries Act, to-wit:
“The Uniform Fiduciaries Act, hereinafter called the Act, was drawn by a committee of the Conference on Uniform State Laws, after a request by bankers that a rule be made by statute to determine when the form of an instrument imposes a duty of making inquiry upon persons dealing with fiduciaries. It was mentioned in the committee reports to the conference that there were general objections to such a measure and also specific objections to it as an amendment of the Negotiable Instruments Law. Nevertheless, because of the appeal of the banking interest and the general feeling of the conference, the committee felt under a duty to proceed with the preparation of a uniform act and let the conference weigh the arguments for and against legislation on the subject. Professor Austin Scott made a study of the question and prepared a draft of the Act, which was adopted substantially as written. The draftsmen apparently believed that the new act would be in harmony with the N.I.L.
* * * * * *
“ * * * One taking an instrument drawn or endorsed by a fiduciary for a personal debt, under the Act, necessarily acts at his peril if in fact a personal debt of a fiduciary is satisfied. Prior to the Act such a transferee might be protected as a holder in due course, in a suit by the principal to recover the instrument. Thus, prior to and after the adoption of the N.I.L. there have been cases which do not impose a rule of absolute liability nor even of constructive notice where a fiduciary instrument was taken for a personal debt. However, the Act provides that there is absolute liability if the instrument is transferred in payment of, or as security for, a personal obligation.
******
“The rule of absolute liability is commendable, although it is an amendment of the N. I. L. The presumption from *22 the facts appearing on the face of the transaction is that the transfer is unlawful. Business practice in this field indicates a general disregard of the facts which create the presumption, so not only would such transactions be in subjective good faith but they also would be sufficient to meet the low objective standard of good faith. To correct this situation the rule of absolute liability is almost necessary.”
Section 3808 creates absolute liability on behalf of the bank when certain limited circumstances exist. Those limited circumstances may be paraphrased as follows. Where a principal has a checking account in a bank and a fiduciary, who is empowered to draw checks upon his principal’s account, draws a check upon his principal’s account in the bank, payable to the bank and delivers such to the bank in payment for or as security for the fiduciary’s personal debt to the bank, the bank accepts this check and applies the principal’s funds to the payment of the fiduciary’s personal debt, then the bank becomes absolutely liable to the principal if the fiduciary in fact breaches his obligation to the principal in drawing and delivering said check. A bank which allows a fiduciary to pay such personal debts under these circumstances, does so at the risk of having to return the money to the fiduciary’s principal.
The principal in this case was a corporation, a separate and legal entity existing separate and apart from the persons participating therein. It is to be looked upon, treated, and the law applied to it as such an entity. One forceful reason for this is exhibited by the circumstances of this case. This corporation is represented herein by the Trustee in Bankruptcy, who, in effect, represents creditors. Creditors of the corporation have a right to rely upon the provisions of Section 3808 as a protection against the depletion of the corporate funds by such a conversion committed by a fiduciary.
As stated by the majority, the statute refers to “a fiduciary” or “the fiduciary”. In this case, however, “a fiduciary” (Robert Clark) was empowered to draw checks upon his principal’s account in the Guaranty Bank, and “the fiduciary”, (Robert Clark) did draw checks upon his principal’s account in the Guaranty Bank with the Guaranty Bank as payee, and “the fiduciary” (Robert Clark) delivered the checks to the bank for the purpose of paying his personal indebtedness to the bank. The fact that Mrs. Rolen was enticed by Clark to cosign these checks in blank thereby inadvertently assisting Clark in his endeavor of committing a fraud and conversion of the funds, does not make it any less a fraud and does not exonerate the bank from liability.
It is further important to note that the total sum of the checks involved was $13,037.01. Of this amount, $12,502.41 was applied to Clark’s bank debts. There is no issue as to the remaining $534.60, nor was the trial court called upon to rule on the status of this sum. The record is not clear but there is some indication that Clark could have been paid this in cash. Assuming, arguendo, that cash was delivered to Clark, such sums would not be subject to recovery from the bank by the corporation under the first portion of Section 3808. This sum would represent an actual “out of pocket” loss to the bank, and the bank, being in good faith, is protected under the first portion of Section 3808. The liability of the bank under the second portion of Section 3808 does not create an actual “out of pocket” loss to the bank but places the bank back in the position that it was prior to the application of the funds to the personal debt of Clark. The bank had loaned money to Clark personally, and under Section 3808 is relegated to collecting its indebtedness from that debtor. The bank cannot rely upon Clark’s authority to write checks on his principal for the payment of this indebtedness. I conclude that this is the intent and purpose of this provision, and even though it may seem in *23 equitable it is nevertheless the law and should be applied as such.
For these reasons the judgment of the trial court should be affirmed. I dissent.