504 So.2d 117 (1987)
GRW ENGINEERS, INC., Plaintiff-Appellant,
v.
George B. ELAM, Jr., et al., Defendant-Appellant.
No. 18449-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1987.
Rehearing Denied March 25, 1987.
Writ Denied May 29, 1987.
*118 Singer Booth & Dean, A Professional Law Corp. by Samuel T. Singer Jr., Winnsboro, for plaintiff-appellant GRW Engineers, Inc.
John Barkley Knight, Jr., Winnsboro, for defendant-appellant George B. Elam, Jr.
Donnie L. Ellerman, Winnsboro, for defendants-appellees Phillip John Killian and Adair's, Inc.
Before HALL, C.J., and FRED W. JONES, Jr. and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
GRW Engineers, Inc. ("GRW") sued Elam, Killian and Adair's Inc. (formerly known as Chateau Royale, Inc.) for architectural and engineering services. The trial court rendered judgment as prayed for against the corporate defendant but declined to render judgment against Elam and Killian, individually.
Elam appealed, contesting that portion of the judgment which recognized GRW's lien against property owned by Elam when the lien was filed.
GRW also appealed, asserting the trial judge erred in refusing to hold Elam and Killian individually liable.
For the reasons hereinafter explained, we affirm.
Chateau Royale, Inc. was formed in the summer of 1980, apparently for the purpose of acquiring a historic building, moving it to property owned by Elam, and converting the building into a restaurant. To this end Elam and Killian contacted GRW to prepare plans and specifications for the conversion. It was originally anticipated by the parties that the cost of the renovation project would be in the $340,000 to $365,000 range.
GRW started work on the project and during the course thereof allegedly made numerous modifications at the request of Elam and Killian. The latter were billed on a monthly basis starting in October 1980. These bills were never paid.
The project was twice let out for bids by invitation only at the request of Elam and Killian. Only one bid was receivedfrom Traxler Construction for $586,400. GRW representatives met with Elam, Killian and Traxler in an attempt to reduce the price.
While GRW personnel were working on modifying the plans they received notice from defendants' attorney that GRW's bills were "out of reason" and that Traxler had made a new bid for $250,000 which defendants had decided to accept. Finally, defendants offered GRW $25,000 for work done on the plans for the project. GRW refused to settle the dispute, a lien was filed and this litigation ensued.
Following is a chronology of significant events occurring in connection with the lawsuit:
June 1980 ... Incorporation of Chateau Royale, Inc.
August 1980 ... GRW engaged to perform architectural and engineering services.
March 1981 ... GRW completes plans and specifications.
March 1981 ... Elam transfers title to lot on which historic building is located to Killian.
March 1981 ... Deed is recorded (previously executed) transferring lot from Killian to Chateau Royale, Inc.
April 1981 ... Chateau Royale, Inc. transfers lot back to Killian.
September 1981 ... Killian conveys lot back to Elam.

*119 December 1981 ... GRW files lien and suit.

Recognition of Lien
Elam argues that the lien filed by GRW was improperly maintained because GRW's plans and specifications were not used in the actual conversion of the historic building into a restaurant.
Licensed architects are entitled to a lien on immovable property for professional services "rendered in connection with a work that is undertaken by the owner." La.R.S. 9:4801(5).
According to the evidence, work on these plans began in the summer of 1980. Renovation work was completed in January 1982 when the restaurant opened for business. GRW had performed site inspections, topographic work, made application to the National Registry of Historic Places, made a presentation to the State Board of Historical Preservation, and received approval from the State Fire Marshal for the conversion. GRW witnesses testified regarding the similarities between GRW's plans and specifications and the completed restaurant. Neither Elam nor Killian ever expressed any dissatisfaction with the plans. In May 1981 the attorney for Elam and Killian sent GRW a letter concerning further modifications of GRW plans and made GRW a fee offer of $25,000 "for all the work that was done ..." Subsequently, Elam contracted with two individuals to do the renovation work on the historic house, converting it into a restaurant. Whether or not the completed restaurant conformed in detail to the plans and specifications prepared by GRW, it was recognized that GRW was owed for its services by the attorney's letter.
Elam relies upon the case of Construction Engineering Company of La. v. Village Shopping Center, Inc., 168 So.2d 826 (La.App. 2nd Cir.1964), writ denied, 247 La. 261, 170 So.2d 512 (1965). There, the plans not only were not used but no construction work was ever begun. Consequently, that case is distinguishable.
We conclude that the plans prepared by GRW were used in the conversion of the historic building into a restaurant.
Elam also argues that he was merely a third party who obtained ownership of the restaurant lot before GRW filed its lien, and thus should not be subject to the lien. He relies upon La.R.S. 9:4822 D(2), which provides that a privilege shall have no effect as to third parties acquiring rights to the immovable before a lien is filed.
Elam was the record owner of the lot at the time GRW was first engaged (summer 1980) and remained the record owner until March 1981. He again became record owner in September 1981. Elam acknowledged awareness of GRW's work relating to the lot at the time he was record owner, attended meetings relative to that project and gave approval to the work. Consequently, Elam was not an unsuspecting third party who purchased the property before the lien was filed. This argument is without merit.
Finally, Elam contends that when an architect submits plans in excess of the originally contemplated cost the owner is not liable for the architect's fee. This record reflects numerous changes made at the request of Elam and Killian and notice by GRW that the cost would be increased. We find no merit in this argument.

Individual Liability of Elam and Killian
GRW contends in its appeal that Elam and Killian were acting in their individual capacities and not as corporate officers when they executed the initial letter of agreement with the architectural firm. It is further argued that Elam was the record owner of the property in question at the time the services of GRW were retained and Elam assisted in the preparation of the plans and specifications as well as participated in the bid negotiations.
On the other hand, the letter of agreement upon which GRW relies is addressed to Elam and Killian and Chateau Royale, Inc. Further, above defendants' signatures is typed "ACCEPTED: Chateau Royale, Inc." In addition, the architectural agreement which GRW wrote and signed, *120 but which defendants never signed, described the owner as "Mr. Phillip Killian, President, Chateau Royale, Inc." It is apparent, from this evidence, that GRW knew it was dealing with a corporation and not simply with two individuals.
GRW next argues that, even if Elam and Killian were acting as agents for the corporation, "the evidence clearly shows the corporation was a mere shell and was used to defeat paying the debt owed GRW." No elaboration upon this argument is presented.
In a few limited situations a litigant can reach an individual shareholder by "piercing the corporate veil," thereby rendering the individual liable for the debts incurred by the corporation. Cahn Electric Appliance Co. v. Harper, 430 So.2d 143 (La.App. 2d Cir.1983). However, it is only in exceptional circumstances that this concept will be applied. Such circumstances may include, but are not limited to: Commingling of corporate and shareholder funds, failure to follow statutory formalities, and undercapitalization. Cahn, supra; Smith Hearron v. Frazier, Inc., 352 So.2d 263 (La.App. 2d Cir.1977), writ denied 353 So.2d 1337 (La.1978). After reviewing the actions of Elam and Killian, we do not find the existence of exceptional circumstances which would justify "piercing of the corporate veil" and holding them individually liable.

Decree
For the reasons set forth, we affirm the judgment of the district court. Costs of appeal are assessed equally to Elam and GRW.