532 So.2d 465 (1988)
CLEGG CONCRETE, INC.
v.
BONFANTI-FACKRELL, LTD., Madg E. Zohdi, Omnia El-Menshawy Zohdi, George M. Bonfanti and Gerald E. Fackrell, Jr.
No. 87 CA 0858.
Court of Appeal of Louisiana, First Circuit.
October 12, 1988.
*466 Michael V. Clegg, Baton Rouge, La., for plaintiff-appellee, Clegg Concrete, Inc.
Chris P. Pierce, Baton Rouge, La., for defendant-appellant, Bonfanti-Fackrell, Inc.
Robert V. McAnelly, Baton Rouge, La., for defendant-appellant, Madg E. Zohdi and Omnia E. Zohdi.
Before WATKINS, CRAIN and ALFORD, JJ.
WATKINS, Judge.
This is a suit to enforce a claim by a concrete seller against the owners of immovable property and the general contractor pursuant to the Private Works Act (LSA-R.S. 9:4801 et seq). Made defendants herein were Madg E. Zohdi, Omnia El-Menshawy Zohdi, George M. Bonfanti and Gerald E. Fackrell, Jr. (hereinafter collectively referred to as the owners); and Bonfanti-Fackrell, Ltd. (hereinafter referred to as contractor). The trial court rendered judgment in favor of plaintiff, Clegg Concrete, Inc. and against the owners and the contractor, in solido, for $51,460.12, and recognizing plaintiff's privilege on the property of the owners.
The Zohdis appealed suspensively. Bonfanti and Fackrell appealed devolutively.[1]

FACTS
The following facts are undisputed.
Commercial Building Supply, Inc. (CBS) was incorporated on June 10, 1983. Dr. Madg Zohdi owned 25% of the stock in CBS at this time. Bonfanti-Fackrell Company, a partnership composed of Bonfanti and Fackrell, owned 75% of the stock in CBS.
On December 14, 1984, a cash sale was executed whereby the owners purchased from CBS certain immovable property located in Jeffaire Commercial Park, East Baton Rouge Parish, Louisiana (the property). The act of sale was recorded in the public records. The owners and CBS also executed a counter-letter, which was not recorded, which reads as follows:

December 14, 1984

COUNTER LETTER
TO WHOM IT MAY CONCERN:
This is to advise that by Act of Cash Sale dated December 14, 1984 Commercial Building Supplies, Inc., sold unto George M. Bonfanti, Gerald E. Fackrell, Jr., Madg E. Zohdi and Omnia El-menshawy, for a recited sales price of TWO MILLION AND NO/100 ($2,000,000.00) DOLLARS, all of the property shown on the attached Exhibit "A". George M. Bonfanti, Gerald E. Fackrell, Jr., Madg E. Zohdi and Omnia El-menshawy mortgaged the property described on Exhibit "A" for the amount of ONE MILLION FIVE HUNDRED THOUSAND AND NO/100 ($1,500,000.00) DOLLARS to Community Savings and Loan Association of Baton Rouge by executing three Promissory Notes, each in the amount of FIVE HUNDRED THOUSAND AND NO/100 ($500,000.00) DOLLARS. The parties do hereby declare that the sale was made only for the convenience of the parties and to facilitate financing.
COMMERCIAL BUILDING SUPPLIES, INC.
 BY /s/_________________
 /s/___________________
 GEORGE M. BONFANTI
 /s/____________________
 GERALD E. FACKRELL, JR.
*467
 /s/______________________
 MADG E. ZOHDI
 /s/______________________
 OMNIA EL-MENSHAWY ZOHDI
The trial transcript reflects the following exchange between Bonfanti and the Zohdis' counsel:
Q. In December of 1984 Commercial Building Supply attempted to make a loan with Community Savings and Loan; is that correct?
A. Yes.
Q. The actualprior to the mortgage being placed on the Commercial Building Supply property, title was transferred from Commercial Building Supply, Incorporated to yourself, Jerry Fackrell and Dr. Zohdi; is that not correct?
A. Yes.
Q. Why did that transaction take place? The sale from Commercial Building Supply to the three individuals?
A. When we
Q. I'm sorry. The two of you and Dr. Zohdi and his wife.
. . . . .
A. The Savings and Loan indicated that they wanted to make the loan to three individuals rather than to the one corporation. They had certain loan limitations, and that was their suggestion to do it that way, and so we had to transfer the property in individual's namesinto three individual names. It was done simply for the convenience of the lender.
On December 28, 1984, Dr. Zohdi sold his 25% of the stock in CBS to Bonfanti-Fackrell Company.
The proceeds of the $1,500,000.00 loan were used in part to pay off a prior mortgage on the property, while part was spent by CBS in construction costs on the property. The remainder of the loan was used as general funds by CBS.
On the Standard Form of Agreement Between Owner and Contractor, dated February 14, 1985, the owner of the property is listed as CBS and the contractor is listed as Bonfanti-Fackrell, Ltd. This contract was not recorded, nor was the contractor required to post a performance bond pursuant to LSA-R.S. 9:4812.
The contractor ordered concrete from Clegg Concrete, Inc., which was delivered to the property, and incorporated into the improvements thereon, from April 16, 1985 through June 6, 1985. The total cost of this concrete was $51,460.12. The record owners never personally ordered the concrete; however, Bonfanti and Fackrell were aware that construction and improvements were being made on the property. Dr. Zohdi testified that he knew nothing of these improvements on the property until after he and his wife purchased Bonfanti's and Fackrell's interest in the property on June 12, 1985, and he purchased 100% of the stock in CBS from Bonfanti-Fackrell Company on August 17, 1985.
Clegg Concrete, Inc. was not paid for its material, therefore, it recorded a materialman's lien against the property on August 1, 1985. This suit was subsequently filed.

TRIAL COURT REASONS
In its reasons for judgment, the trial court stated, in pertinent part, as follows:
There appears to be no contest to the fact that $51,460.12 owing Clegg Concrete, Inc. is secured by a lien on the Jeffaire properties. The dispute is whether or not there's any liability on Bonfanti-Fackrell, Limited and the owners of the real estate.
The parties have agreed that if the owners contracted with the contractor, Bonfanti-Fackrell, Limited, and then material, later [sic] bills weren't paid, then there would be personal liability inasmuch as there was no bond or contract recorded. However, it's their position that apparently none of these individuals contracted with Bonfanti-Fackrell, Limited and therefore they cannot have any liability.
Further, under Louisiana Revised Statute 9:4806(B), it provides that claims against an owner granted by R.S. 9:4802 are limited to the owner or owners who have contracted with the contractor.

*468 These four individuals hope to escape liability by saying we didn't contract with the contractor so we have no personal liability. That poses some interesting questions: Number one is how a corporate entity such as Bonfanti-Fackrell, Limited, which is wholly owned by Bonfanti-Fackrell Holding Company, which is owned by Bonfanti-Fackrell Company, a Partnership, fifty-fifty of each individual, how that Bonfanti-Fackrell, Limited would know what to bill, how tothe agreement to be paid that was going to be made. The obvious answer to that is well, judge, the Bonfanti Number-1, the construction contract, shows that the contract was between Commercial Building Supply. But we know that Commercial Building Supply wasn't the owner of the property. It couldn't be the owner because ownership was in the four individuals. So, the only person that Bonfanti-Fackrell, Limited could contract with as owners would be the four individuals.
Apparently what's sought to happen here is that we will intercede a person and declare them as the owner even though they don't own anything and say that they did the contracting with the contractor, therefore the owners can't be liable. Well, that's difficult to understand how that act would hold up. The only person who can contract with the contractor is the owner. And if these four individuals wish to superimpose some corporate entity and say that they're the owner and they contracted with Bonfanti-Fackrell, Limited, contractor, then I think that perhaps the appointment of that corporation constitutes an agency relationship. Apparently there was never any intent even under those proper instruments for the property to be owned by Commercial Building Supply because the counter letter doesn't say that, it just merely says that the sale from Commercial Building Supply made those four individuals for convenience. Proffer Number-2 shows that at any given time Zohdi was going to transfer his interest and his wife's over to Bonfanti-Fackrell, not back to Commercial. Dr. Zohdi says, gee, I don't have anything to do with this, they came to me and wanted my strength to get the mortgage. The mortgage proceeds, as testified by Mr. Bonfanti, was used to pay off existing loan and and for construction costs and then some money went to the general funds. There is no breakdown as to what disbursements were made from this loan from the lending institution, Community Savings and Loan.
Dr. Zohdi, who is an extremely intelligent gentleman not only in engineering but in the business community, should realize that when you sign your name to help someone for financial reasons, more than likely there's going to be some kind of an obligation against you, otherwise there'd be no need for your signature.
The record reflects that Dr. Zohdi, and the stipulations reflect that he sold his interest in Commercial Building Supply on December 28, '84, then he comes right back in August of '85 and buys a hundred percent.
This court feels that Dr. Zohdi and Mrs. Zohdi and Mr. Bonfanti and Mr. Fackrell are in essence the people who have contracted with the contractor and they should have personal liability in this matter. I can't see how they can superimpose a non-ownership entity, Commercial Building Supply, as the owner on a contract that wasn't even recorded and say hey, we did not contract with the contractor so we have no personal liability.
The court will render judgment in favor of Clegg Concrete, Inc. and against Dr. Zohdi and Mrs. Zohdi and Mr. Bonfanti and Mr. Fackrell, Bonfanti-Fackrell, Limited, for the $51,460.12 together with legal interest from date of judicial demand and for costs, also recognizing the materialman's lien against the property described in that lien in Jeffaire and will sign judgment accordingly.

LIABILITY OF OWNERS
All appellants allege the same assignment of error; namely, that the trial court erred in rendering judgment against them *469 when they had not contracted with the general contractor for the property improvements.
At the time in question, LSA-R.S. 9:4806(B) provided as follows:
B. The claims against an owner granted by R.S. 9:4802 are limited to the owner or owners who have contracted with the contractor. If more than one owner has contracted each shall be solidarily liable for the claims.
It is well settled that lien statutes, being in derogation of the common rights of owners and mortgagees, must be strictly construed against the lienors and liberally interpreted in favor of persons whose common rights are thereby impinged upon. Louisiana National Bank of Baton Rouge v. Triple R Contractors, Inc., 345 So.2d 7 (La.1977); also cf. Daniel v. Griffis, 479 So.2d 503 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1019 (La.1986).
Appellee, Clegg Concrete, Inc., asserts in brief that the unrecorded counter-letter is of no effect regarding its claim. It contends that, as far as third parties are concerned, the owners of the property at the time in question[2] were the Zohdis, Bonfanti and Fackrell, as reflected by the recorded act of sale.[3]
After a thorough review of the record, however, we find no evidence whatsoever tending to prove that Dr. and Mrs. Zohdi "contracted with the contractor" as required by LSA-R.S. 9:4806(B); nor is there any evidence supporting the existence of an agency agreement, actual or implied, between Dr. and Mrs. Zohdi and CBS, authorizing CBS to contract with Bonfanti-Fackrell, Ltd. on their behalf. Further, the record does not establish the extent of CBS's right to the use or enjoyment of the property at the time in question, whether by a contract of lease or some other agreement with the record owners. The record only establishes that Bonfanti and Fackrell were aware of the improvements being made to the property; however, mere knowledge by Bonfanti and Fackrell that these improvements were being made is not sufficient to establish liability on their part. See Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336 (1962) (interpreting former sections 4801 and 4811). Appellee has failed to establish a prima facie case.[4]
The trial court also erred in stating that the Clegg Concrete, Inc. debt was "secured by a lien on the Jeffaire properties", since LSA-R.S. 9:4806(C) provides the privilege under sections 4801 and 4802 "affects only the interest in or on the immovable enjoyed by the owner whose obligation is secured by the privilege." Appellee has not proven any obligation on the part of the owners, therefore no privilege exists to secure any obligation.
Accordingly, the trial court erred in concluding that the record owners were personally liable based upon an "agency relationship."
These assignments of error have merit.

DECREE
For the foregoing reasons, the portion of the trial court judgment against Madg E. Zohdi, Omnia El-Menshawy Zohdi, George *470 M. Bonfanti and Gerald E. Fackrell in favor of Clegg Concrete, Inc. is reversed. The portion of the trial court judgment recognizing plaintiff's lien and privilege on the therein described property is also reversed. That part of the trial court judgment against Bonfanti-Fackrell, Ltd. is not disturbed. See Footnote No. 1. Costs of appeal are assessed against appellee, Clegg Concrete, Inc.
REVERSED.
NOTES
[1] Bonfanti-Fackrell, Ltd. did not appeal the trial court judgment, which is therefore final as to this entity.
[2] From the date of the contract between CBS and Bonfanti-Fackrell, Ltd. (February 14, 1985) until the last of the concrete was delivered (June 6, 1985).
[3] Since appellee does not allege in the alternative, nor prove, that the December 14, 1985 act of sale was a simulation between the immediate parties, and since CBS is not a party to this suit, we need not address the liability, if any, of CBS as the alleged owner; nor do we have to address the effect of any privilege on the property that may result under such a claim, or its ranking in relation to security interest of other third parties who may have chosen to rely on the public records.
[4] In addition, although the record shows that Fackrell signed the Standard Form of Agreement Between Owner and Contractor in his capacity as CBS's president, we cannot justify the trial court's apparent disregard of CBS's status as a distinct corporate entity when CBS is neither a party to this suit, nor is there any evidence of record to support "piercing the corporate veil" in order to hold its officers or shareholders (Bonfanti-Fackrell Company) liable. See Harris v. Best of America Inc., 466 So.2d 1309 (La.App. 1st Cir.), writ denied, 470 So.2d 121 (La.1985).