625 So.2d 1125 (1993)
NORRIS RADER, INC., Plaintiff-Appellee,
v.
James Michael SWILLEY, et al., Defendants-Appellants.
No. 92-741.
Court of Appeal of Louisiana, Third Circuit.
October 20, 1993.
*1126 Lynn A. Derouen, New Iberia, for Norris Rader, Inc.
James T. Genovese, Opelousas, for Southland Federal Sav. Bank.
Before STOKER, THIBODEAUX, SAUNDERS and DECUIR, JJ., and CULPEPPER,[*] J. Pro Tem.
WILLIAM A. CULPEPPER, Judge, Pro Tem.
This case involves the ranking of a materialman's lien and a recorded real estate mortgage. The parties stipulated to the following facts:
1. James Michael Swilley purchased the property made the subject of these proceedings, from Viola George, on September 11, 1989;
2. Southland Federal Savings Bank [hereafter Southland] obtained a mortgage from Mr. and Mrs. Swilley on September 11, 1989;
3. Both the sale and the mortgage referred to above were recorded on September 20, 1989 in the St. Martin Parish records;
4. Before executing the sale or becoming record owner, Swilley had been given access to the property and was allowed by Viola George, the owner, to make improvements. However, Mrs. George had no knowledge as to the purchase, origin, or extent of any improvements actually made on the premises;
5. On November 9, 1989, concerning the same property, Norris Rader, Inc. [hereafter Rader] filed a lien and privilege against Swilley in the mortgage records of St. Martin Parish for the principal sum of $3,447.38;
6. Southland subsequently foreclosed on its mortgage, and purchased the property at sheriff's sale, pending determination of the validity and ranking of the mortgage in favor of Southland and the lien in favor of Norris Rader, Inc.
In addition, testimony was adduced at trial that Swilley's indebtedness to Norris Rader, Inc. was incurred in connection with the delivery of building materials and supplies to Swilley at the property he purchased from Viola George. The testimony showed that building materials in the amount of $3,124.05 were delivered to Swilley at the George property before Swilley purchased the property. After Swilley acquired the property from George, Rader delivered $323.33 worth of building materials to the premises. It is undisputed that the building materials delivered were used in the renovation project on the premises.
After considering these facts, the trial court held that Rader's materialman's lien primed Southland's recorded real estate mortgage. In reaching its conclusion, the trial court stated that it considered Swilley as either a lessee or other person owning or having the right of use or enjoyment of the premises. Accordingly, it recognized the entirety of the materialman's lien as priming the Southland mortgage, since the renovation project was undertaken by Swilley in contemplation of owning the property.
*1127 Southland contends on appeal that the trial court erred by not finding that the materialman's privilege only affected Swilley's interest as lessee. Accordingly, it argues that the privilege should not have been extended to the land itself.
LSA-R.S. 9:4801 provides in pertinent part:
"The following persons have a privilege on an immovable to secure the following obligations of the owner arising out of a work on the immovable:
* * * * * *
(3) Sellers, for the price of movables sold to the owner that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable."
LSA-R.S. 9:4806 is ancillary to the statute just quoted. It defines the word "owner" and provides for the interest which is affected by the privilege. In particular, it provides in pertinent part:
"A. An owner, co-owner, naked owner, owner of a predial or personal servitude, possessor, lessee, or other person owning or having the right to the use or enjoyment of an immovable or having an interest therein shall be deemed to be an owner.
* * * * * *
C. The privilege granted by R.S. 9:4801... affects only the interest in or on the immovable enjoyed by the owner whose obligation is secured by the privilege."
As noted by the trial court, the question presented in the case sub judice is res nova under the revisions of the private works act which became effective in 1982. The prior act contained a provision that the materialman's lien applied where the material was furnished "with consent" of the owner. This provision was deleted from the present act.
Jurisprudence under the prior act shows how strictly the courts construe lien statutes. In Security Homestead Association v. Schnell, 232 So.2d 898 (La.App. 4th Cir. 1970), writ denied, 256 La. 263, 236 So.2d 35 (1970), the court states at pages 900-901:
"The plaintiff acknowledges that since the work was commenced and the materials delivered to the premises prior to and within 30 days from the recordation of its vendor's lien, the materialmen's liens would outrank its vendor's privilege and lien under LSA-R.S. 9:4801 and 4812, except for one thing. Louis F. Schnell, Jr., was not the owner of the property when most of the materials were purchased by him. Nor is there any evidence in the record to show that he was an authorized agent or representative of the owner, or one with whom the latter had contracted for the work, or that the improvements were made and the materials furnished with the consent or at the request of the owner, William J. Spinella.
The appellant's position is correct under the law and circumstances presented here, except insofar as the materialmen's liens secure the purchases made by Mr. Schnell on and after he became the owner of the property by his deed of May 10, 1968.
LSA-R.S. 9:4801 et seq. provide privileges and liens for various parties engaged in construction and repair of immovable property and for the furnishers of material, machinery and fixtures used therein `with the consent or at the request of the owner thereof, or his authorized agent, or representative, or any person with whom the owner has contracted for such work, * * *'. (Emphasis supplied.) A materialman's privilege primes bona fide vendor's privileges or mortgages unless the latter `exist and have been recorded before the work or labor has begun or any material has been furnished * * *'. (Emphasis supplied.)
Lien statutes are stricti juris. Their provisions must be interpreted rigidly and the privileges conferred thereby are not to be extended or enlarged either by implication or the application of equitable considerations."
* * * * * *
"The words of the lien statute are clear and unambiguous with respect to the situation before the court and we are bound to interpret them literally. The equities of *1128 the parties, of course, are of no consideration in these lien cases."
There is no doubt that the purchases made by Swilley after he became the owner of the lot primed Southland's mortgage. Thus, it is only those purchases made by Swilley prior to becoming owner which concern us.
Because lien statutes are strictly construed, Security Homestead Association v. Schnell, supra, we must construe the statute as written. The materials delivered before Swilley became owner were not "sold to the owner", as required by the statute.
The comments to R.S. 9:4801 as amended state that the statute "presupposes a direct contractual relationship between the privilege holder and the owner. The privilege is thus accessory to the conventional obligation of the owner." No direct contractual relationship existed between Viola George, the land owner, and Rader. Thus, the comment supports our decision.
Accordingly, we find that the trial court erred in extending the statute to include Swilley's contractual relationship with Rader which preexisted his ownership of the property. We will amend the judgment to recognize Rader's lien only as to Swilley's indebtedness incurred with Rader subsequent to his purchase of the property from George.
For the foregoing reasons, the judgment of the trial court is amended to reduce the award to the sum of $323.33. Otherwise, the judgment is affirmed.
Costs of trial and appeal are assessed one-half to Norris Rader, Inc. and one-half to Southland Federal Savings Bank.
AMENDED and AFFIRMED.
DECUIR, J., dissents and assigns written reasons.
THIBODEAUX, J., dissents for reasons assigned by DECUIR, J.
DECUIR, Judge, dissenting.
I respectfully dissent, being of the opinion that the trial court's decision was correct.
LSA-R.S. 9:4806(A) defines "owner" for purposes of the Private Works Act. The definition is very broad, encompassing all imaginable interests. It is clear that at all pertinent times Swilley was an "owner" as defined by the statute. In addition, prior to the recordation of the bank's mortgage, Swilley's interest expanded to that of "record owner". At the instant the Act of Sale was recorded, Swilley was clearly the holder of an ownership interest in the premises not yet subject to any recorded mortgage.
While the Private Works Act must be strictly construed, our courts have held that strict construction cannot be so interpreted as to permit purely technical objections to defeat the real intent of the statute. Authement's Ornamental Iron Works, Inc. v. Reisfeld, 376 So.2d 1061 (La.App. 4th Cir.1979), writ denied, 378 So.2d 1390 (La.1980). In this case, the majority's interpretation is so narrow that it defeats the real intent of the statute.
The clear intent of the Private Works Act is to protect laborers and materialmen for their just claims. C.J. Richard Lumber Co., Inc. v. Melancon, 476 So.2d 1018 (La.App. 3rd Cir.1985), writ denied, 478 So.2d 1236 (La.1985). The above stated legislative intent would be defeated if the claim in favor of Rader is not recognized as secured by a privilege which primes the mortgage held by the bank. Once Swilley became the record owner, the privilege in favor of Rader affected whatever interest Swilley had in the premises, no matter how great or small, including record ownership. The materialman's privilege would affect the interest in the immovable enjoyed by the owner (Swilley) whose obligation is secured by the privilege.
The decision of the trial court correctly interpreted the intent and purpose of the Private Works Act and should have been affirmed. Accordingly, I respectfully dissent.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.