CANNELLA, Judge.
Defendant, Chateau Riviere Home for the Aged, Inc. (Chateau), appeals from a money judgment and architect’s hen in favor of plaintiff, Rick LeBlanc. We affirm.
Chateau is a Louisiana corporation which was created by Leonard James Holmes (Holmes) in 1984 to build, own and operate a nursing home in St. Charles Parish, Louisiana. In 1984, 1985 and 1986, Holmes was the sole shareholder and president of Cha *470 teau. He and his mother, Mary Helen Holmes, were the sole directors and she was the secretary of the corporation.
Chateau negotiated a contract with plaintiff to perform the architectural work and services of the home construction. A “Standard Form of Agreement Between Owner and Architect” was executed between the parties on April 24, 1985. The contract provided that Chateau was the “Owner” and that the home was to be located- in St. Rose, Louisiana. The architectural services fee was |3$80,000. Eighty-five percent of the fee was to be paid by the end of the “Construction Documents Phase.” The contract specified that payment was contingent on the sale of bonds to finance the project.
By the end of 1985, a dispute arose between the parties. In addition, the location of the home had to be changed because of zoning regulations. However, Holmes had another piece of property located in Destre-han, Louisiana which was suitable. He had previously purchased this piece of property individually for $331,838 in June of 1984 (pri- or to the agreement with plaintiff) with $400,000 borrowed by him from his parents, Mary Helen and E.J. Holmes. In August of 1985, after Chateau executed the agreement with plaintiff for architectural services, Holmes transferred the Destrehan immovable property, on which he intended to build the Chateau Home for the Aged, to his parents by dation en paiement.
The change of location had not been contemplated in the agreement and the new location required more work by plaintiff because of the differences in shapes between the old and new sites. Furthermore, a state required Certificate of Need or a transfer of the one obtained for the St. Rose site was needed before construction could begin on the new property. An addendum to the agreement was subsequently executed on January 24, 1986 and recorded. Plaintiff claims that $55,149.50 was owed to him in January of 1986 for 75% completion of the “Construction Documents Phase”, for which he had not been paid. Plaintiff contends that the addendum was necessary to reflect the change in sites and to show an acknowledgment of the debt by Chateau. Holmes, in his representative capacity, contends that he signed the addendum under duress: the threat by plaintiff and the others involved that he would not obtain his Certificate of Need |4unless he signed. In the addendum, the parties (plaintiff and Chateau) recognized that the site would be changed, that $55,-149.50 was presently due and owing to plaintiff, that interest would accrue on that amount at the rate of 12% per annum, and that Chateau would pay reasonable attorney’s fees in the event plaintiff had to employ an attorney to enforce collection of any amounts due thereunder.
Thereafter, plaintiff, without being paid any part of the $55,149.50, worked on the project until May of 1986. Plaintiff stopped working on the project and, on May 20,1986, executed a lien affidavit for his architectural services which he filed on May 22,1986. On July 24,1986, plaintiff filed suit for collection of the amounts due under the addendum, and enforcement of his architectural lien under La. R.S. 9:4801.
In September of 1986, unable to get financing and having legal difficulties with the original contractor and developers, Suncoast Mutual Construction, Inc., Robert Daniels, Suncoast’s president, and Ben Wimberly, the proposed manager, Holmes sought assistance from Melville Borne (Borne), an experienced nursing home project developer. Borne became a 25% shareholder in exchange for obtaining financing and constructing the facility. His companies obtained the financing, completed development of the home and manage it. Chateau purchased a portion of the property on which the nursing home was built from Holmes’ parents in early 1987. In late 1987 or early 1988, Borne became 100% owner of Chateau because Holmes was unable to repay Borne for the money expended on the project.
A judge trial was held on March 31, 1997. Following the trial, a judgment was rendered in favor of plaintiff in the amount of $55,-149.50, with legal interest from January 24, 1986 until paid and attorney’s fees of 25% of all amounts duel sand owing. The trial judge found that the addendum was “freely and voluntarily made by and between the parties.” The trial judge also found that plain *471 tiff was entitled to a lien against the Destre-han property, under La. R.S. 9:4801.
On appeal, Chateau asserts that the trial judge erred in awarding plaintiff the addendum contract amount because it was executed under duress and hence, void. It also contends that the trial judge erred in recognizing the lien because the property was not owned by Chateau when the lien was filed, but by Mary Ellen and E.J. Holmes, who had not contracted with plaintiff.
First, Chateau argues that the addendum is void because it was executed under, duress. It contends that the original contract specified in paragraph 14.2.2 that the Design Development phase was to be paid upon financing with bonds being sold. It contends that both parties understood that plaintiff was to help obtain financing through he sale of bonds in order to receive further payments on the contract. This was never obtained, as testified to by the parties. Holmes argues and testified that he was forced to sign the addendum because plaintiff threatened to use his political influence to have the necessary Certificate of Need canceled. Although Chateau had obtained a Certificate of Need for the St. Rose site, it was not transferable. When a zoning ..problem related to parking halted the development on the St. Rose site, Chateau changed the site to Destrehan. However, the testimony showed that this required a new Certificate of Need. Holmes stated that in order to get the new certificate, he had to pay Sherman Copeland and Robert Daniels and had to sign the addendum acknowledging the debt, which Holmes disputed was owed. He testified that when he paid Copeland and Daniels, the certificate was immediately approved and issued, dated in November of 1985. Holmes also said that he felt compelled to sign the | (¡addendum because he was afraid that he would lose over $200,000 which he had already spent on improvements to the property, as well as to obtain the certificate. Chateau asserts that plaintiff knew Holmes was having financial difficulty and had no choice but to sign the addendum. Holmes filed for bankruptcy shortly thereafter.
Plaintiff asserts that Chateau’s argument should not be considered because it failed to raise the affirmative defense of duress, as required by La. C.C.P. art. 1005. Garlepied Transfer, Inc. v. Guaranty Bank & Trust Company, 94-549 (La.App. 5th Cir.5/30/95), 656 So.2d 728, 737.
La. C.C.P. art. 1005 provides that duress be affirmatively pled. However, when issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated as if they had been raised by the pleading. La. C.C.P. art. 1154. Here, the issue of duress was tried without objection and thus, the objection to this argument was consequently waived.
Alternatively, plaintiff asserts that the contract is clear and unambiguous, which Chateau does not deny. Plaintiff further asserts that Holmes’ testimony at trial was unbelievable. On one hand, he claimed to be an “innocent lamb.” On the other hand, he asserted that he gave a $20,000 payment to a New Orleans legislator, Sherman Copeland, in order to get the certificate. Plaintiff argues that these assertions cast grave doubt as to Holmes’ credibility. Furthermore, plaintiff asserts ■ that Chateau was not coerced into signing the addendum, but that the addendum was necessary because of the site change requiring new plans. Plaintiff testified that he did not have any expertise in obtaining a Certificate of Need, that he met with Sherman Copeland only one time with Robert Daniels and that he only met Robert Daniels once before. He had no past or future ^relationship with either man. Plaintiff testified that his only involvement was as an architect. When Holmes wanted another large change to the plans after the addendum was signed, plaintiff decided to quit the project because he had still not been paid for the work which he had already performed, which amounts defendant had agreed to pay in the addendum.
On appellate, review, the court’s function is to determine whether the trial judge’s findings were clearly wrong or manifestly erroneous. Johnson v. State Farm Mut. Auto. Ins. Co., 95-1027 (La.App. 5 Cir. 5/15/96), 675 So.2d 1161, 1163. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable infer- *472 enees of fact should not be disturbed upon review, even though the appellate court may-feel that its own evaluations and inferences are as reasonable. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether his conclusion was a reasonable one. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993). Thus, where two permissible views of the evidence exist, the factfin-der’s choice between them cannot be manifestly erroneous or clearly wrong. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Stobart v. State, Through DOTD, 617 So.2d at 882. However, where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or even in a finding purportedly based 18upon a credibility determination. Rosell v. ESCO, 549 So.2d at 844-45.
The trial judge found that plaintiff performed his obligations under the contract and that Chateau breached its obligations by failing to pay. The trial judge also found that the addendum was freely and voluntarily made by and between the parties. After reviewing the evidence, we find that the trial judge was not manifestly erroneous in his determinations.
In its’ second assignment of error, Chateau contends that the trial judge erred in finding that the lien is enforceable. Defendant argues that under La. R.S. 9:4801, et seq, the lien must be asserted against the owner of the property who contracted with the lienholder for the particular work. In this case, the lien was filed against Chateau, but the property was owned by Holmes’ parents at the time, citing Clegg Concrete, Inc. v. Bonfanti-Fackrell, Ltd., 532 So.2d 465 (La.App. 1st Cir.1988); Norris Rader, Inc. v. Swiley, 625 So.2d 1125 (La.App. 3rd Cir.1993); Circle H Bldg. Supply, Inc. v. Dickey, 558 So.2d 680 (La.App. 1st Cir.1990); Abbeville Lumber Co. v. Richard, 350 So.2d 1292 (La.App. 3rd Cir.1977).
Plaintiff responds that the contract between the parties asserts that Chateau is the owner of the property. Further, Holmes held defendant out as owner in the application process to obtain the Certificate of Need and for all other permits and zoning changes. In addition, Chateau later acquired the Des-trehan property. Plaintiff argues that the statute does not require the owner of the project who hires the architect to own the property at the time services are hired or that the services be performed after the owner buys the land for the project in order to preserve the lien rights. Plaintiff also asserts that Chateau failed to raise this as an affirmative defense.
| sin regard to Chateau’s failure to raise the impropriety of the lien as an affirmative defense, a review of the transcript shows that this issue was also tried without objection and is, therefore, waived. La. C.C.P. arts. 1005,1154.
La. R.S. 9:4801 provides in part:.
The following persons have a privilege on an immovable to secure the following obligations of the owner arising out of a work on the immovable:
(5) ... licensed architects ... employed by the owner, for the price of professional services rendered in connection with a work that is undertaken by the owner ...
An owner is defined in La. R.S. 9:4806 as:
A. An owner, co-owner, naked owner, owner of a predial or personal servitude, possessor, lessee, or other person owning or having the right to the use or enjoyment of an immovable or having an interest therein shall be deemed to be an owner.
Parts B and C further state that:
B. The claims against an owner granted by R.S. 9:4802 are limited to the owner or. owners who have contracted with the contractor or to the owner or owners who have agreed in writing to the price and work of the contract of a lessee, wherein such owner or owners have specifically *473 agreed to be liable for any claims granted by the provisions of R.S. 9:4802. If more than one owner has contracted each shall be solitarily liable for the claims.
C. The privilege granted by R.S. 9:4801 and 4802 affects only the interest in or on the immovable enjoyed by the owner whose obligation is secured by the privilege ...
First, the architect here, was “employed by the owner, for the price of professional services rendered in connection with a work that is undertaken by the owner ...” The fact that Chateau became the owner of the Destrehan property after the lien was filed is of no moment. Second, La. R.S. 9:4806 | ^states that it applies to “... or other person ... having the right to the use or enjoyment of an immovable ...” Here, although Chateau was not an “owner” of the property when the lien was filed, Chateau held itself out to be the owner, intended to become the owner and actually became the owner subsequently. Third, the recorded lien attached to the Destrehan property when Chateau acquired it. In a similar way, a money judgment against Chateau, recorded before Chateau acquires ownership of property, becomes a lien against said property when Chateau becomes owner. Fourth, Chateau was the party that contracted with plaintiff and breached the contract with plaintiff. Lien laws are designed to protect the innocent. Chateau is not an innocent owner. We find GRW Engineers, Inc. v. Elam, 504 So.2d 117 (La.App. 2nd Cir.1987) analogous. Consequently, we find that the trial judge did not err in finding the hen enforceable against Chateau.
Accordingly, the judgment of the trial court is hereby affirmed.
. Costs of this appeal are ..to be paid by Chateau.
AFFIRMED.